[Civ. No. 11666.   First Dist., Div. One.   Dec. 29, 1941.]

LILLIAN GOODMAN, Appellant, v. THE BOARD OF EDUCATION OF THE SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Respondents.

Wayne M. Collins for Appellant.

John J. O'Toole, City Attorney, Walter A. Dold, Chief Deputy City Attorney, and Irving G. Breyer for Respondents.

WARD, J.—An appeal from a judgment denying petitioner a writ of mandate entered following the sustaining of respondents' general demurrer without leave to amend. The writ is sought to compel respondent board of education and the individual members thereof, its secretary and the superintendent of public schools of the San Francisco Unified School District to permit the use, as a civic center, of an auditorium or school room in a designated free public schoolhouse. The application therefor set forth that the use of the premises was desired "for the purpose of meeting and discussing the Socialist Party's position on the question of 'Peace', a subject appertaining to the political, economic and moral interests of the citizens of their respective community in which they reside . . . said meetings to be open to members of said association and any other persons interested in discussing the aforesaid topic without any admission charge." Attached to the petition is the report and recommendation of the superintendent of schools, which was adopted by the Board of Education. It reads in part as follows: " ' "Request has been made, through the Civil Liberties Union, by Mrs. Lillian Goodman, representing the Socialist Party, for the use of the auditorium . . . to discuss the position of the Socialist party on the question of 'Peace.' The Superintendent believes discussions of this nature violate the rule of the Board of Education prohibiting the use

of a school building for sectarian, political or partisan purposes, and respectfully recommends that the request be denied.'' ' ''

■ Sections 6.740, 6.741 and 6.742 of the ''Use of School Property'' act (div. 6, pt. 3, ch. 1 of the School Code) respectively provide: ''Boards of school trustees and city boards of education are hereby authorized to grant the use of school buildings or grounds for public, literary, scientific, recreational or educational meetings, or for the discussion of matters of general or public interest upon such terms and conditions as said board may deem proper, and subject to the limitations, requirements, and restrictions set forth in this Chapter.'' ''Said use shall not be inconsistent with the use of said buildings or grounds for school purposes, nor interfere with the regular conduct of school work.'' ''Said use shall not be granted in such a manner as to constitute a monopoly for the benefit of any person or organization.''

It appears from the above that some discretionary, but not arbitrary, power is reposed in the board, and that the right of use is permissive. ■ Assuming this conclusion to be correct, it follows from the allegations of the complaint that the judgment, based upon the order sustaining a general demurrer to the complaint, is erroneous and that the writ should issue. The complaint alleges that respondent board has granted the use of school rooms or auditoriums to sundry associations of citizens organized for political and partisan purposes for the discussion of political, economic and moral matters and issues. Whatever discretion was reposed in respondent board, it was not intended that one public group should receive favors denied another of like character because the latter holds views contrary to those of the first group.

It is not necessary to discuss sec. 6.740 further as the petition herein is based squarely upon chapter 2 of the same part of the School Code, which confers upon certain groups a right, instead of a permissive user, to the use of such civic center for the specific purposes and under conditions enumerated in the chapter.

■ The management, direction and control of a civic center schoolhouse are vested in its board of trustees or board of education (School Code, sec. 6.760), subject to reasonable rules and regulations by such boards for the conduct of civic meetings and recreational activities, in connection with which

a supervising officer may be appointed. (School Code, secs. 6.761, 6.762.) The legislature has determined that such use of schoolhouses, property and grounds by the associations and groups shall be free (School Code, sec. 6.770), except that "In the case of entertainments or meetings where admission fees are charged or contributions are solicited and the net receipts of such admission fees or contributions are not expended for the welfare of the pupils of the district or for charitable purposes a charge must be made for the use of said schoolhouses, property and grounds." (School Code, sec. 6.771.) Necessary expenses of lighting, heating, janitor service, etc. "shall be provided for out of the county or special school funds of the respective school districts in the same manner and by the same authority as such similar services are now provided for." (Stats. 1939, p. 2420, School Code, sec. 6.772.) A restriction is placed upon the use of such public schoolhouse and grounds in that it "shall in nowise interfere with such use and occupancy of said public schoolhouse and grounds, as is now, or hereafter may be required, for the purposes of said public schools of the State of California." (School Code, sec. 6.751.) Up to this point, on this particular subject the duties and activities of the board are ministerial.

Section 6.750 of the School Code provides: "There is hereby established a civic center at each and every public school building and grounds within the State of California, where the citizens, parent-teachers' association, Campfire Girls, Boy Scout troops, farmers' organizations, clubs and associations formed for recreational, educational, political, economic, artistic and/or moral activities or the respective public school districts within the State of California may engage in supervised recreational activities and where they may meet and discuss, from time to time, as they may desire, any and all subjects and questions which in their judgment may appertain to the educational, political, economic, artistic and moral interests of the citizens of the respective communities in which they may reside. Governing boards of the respective school districts within the State may authorize the use, by such citizens and organizations of any or all other properties under their control, for supervised recreational activities.

"Such use, however, by any individual, society, group or organization which has as its object or as one of its objects, or is affiliated with any group, society, or organization which

has as its object or one of its objects the overthrow or the advocacy of the overthrow of the present form of government of the United States or of the State of California by force or violence or other unlawful means shall not be granted, permitted or suffered.'' (Stats. 1939, p. 2419, ch. 837.)

The only discretionary power conferred upon the board is that it may deny permission to use the schoolhouse by subversive organizations, the burden of proving the character and affiliation of the group being upon the board. The statute is silent upon the method of determining whether the object of an applicant group is in fact advocacy of the overthrow of the government of the United States or of the State of California.

If, as above stated, the board is unable to prove the subversive nature of the applicant society or organization, then the public schoolhouse may be used and the group ''may meet and discuss . . . all subjects and questions which in *their judgment* may appertain to the . . . political . . . interests of the citizens of the respective communities in which they may reside.'' (Italics added.)

The question is not presented upon this appeal, but it may be assumed that the violation of, or intention to violate, a statute or ordinance would justify the refusal to grant the use of school property, or the revocation of permission theretofore granted. Aside from that, the intent and purpose of the chapter plainly appears to be to bestow an absolute right of user, with regulatory power in the board, limited as set forth in the chapter. In reaching this conclusion we are mindful that entertainments may be staged ''where admission fees are charged or contributions are solicited'' (sec. 6.771, *supra*) ; that a social dance may be permitted (*McClure* v. *Board of Education,* 38 Cal. App. 500 [176 Pac. 711]), unless it necessitates the removal of school desks, furniture, etc. It may be conceded that the giving of entertainments, dances, etc., in public schools may not meet with the approval of citizens in some districts, and may in others; there may be a diversity of opinion on the advantage to the community of discussing in an open meeting subjects pertaining to politics, art or morals; the advocacy of certain social and economic views may be denounced by a majority of the citizenry of a community as repugnant to the constitution of this country; such advocacy may tend to undermine in adult and youth, moral responsibility, or may stir up an-

tagonism and hatred to constituted authority, but, unless it is sought thereby to overthrow the government by force or violence, or other unlawful means, the *group* determines whether the discussion of the subject is in the interests of the citizens of the community. In this respect there is no ambiguity in the language used by the legislature. It must be assumed that such body acted wisely in not conferring upon the board, except as in the statute provided, a "discretion" in the matter of subjects to be discussed.

In the interpretation of a statute, a reviewing court may not be hesitant in declaring its conclusion. It is not within the province of this court, regardless of its opinion on the matter, to state that a statute is wise or unwise. (*Max Factor & Co.* v. *Kunsman,* 5 Cal. (2d) 446 [55 Pac. (2d) 177].)

Appellant and respondents argue exhaustively upon numerous citations, the use of the words "may" in section 6.750, and "shall" and "must" in other sections. It is sufficient to say that in many instances permissive words are given a mandatory meaning, and mandatory words, a permissive meaning, dependent upon a clearly stated policy and the evident intent of the legislature.

Respondents' contention that the word "political" as used in the section should be read to mean "public" is without merit. Assuming that the word "public" should be substituted for "political," it would be without assistance to respondents in the present proceeding. The subject to be discussed—"Peace"—might be of interest to the community either as a public or a political question. The rule of the board insofar as it prohibits discussion of "political" subjects contravenes the provision of the section.

Assuming, but not deciding, that "sectarian" refers to religious denominational groups, no opinion is expressed herein on the propriety of the rule prohibiting the use of public school property for sectarian purposes. That question would require consideration of constitutional questions not involved on this appeal.

Respondents claim that it is unconstitutional to allow school buildings to be used for purposes set forth in appellant's request. (Const. Cal., art. IX, sec. 6.) In brief, the argument appears as follows: "Nowhere in the state constitution do we find any provision for the use of school buildings or any portion thereof for outside purposes." It is

further argued that if the two statutes under consideration (secs. 6.740 and 6.750) are held to be constitutional, such grant of authority by the legislature would result in funds, required to be raised for public school education, being diverted to other activities, and, regardless of how desirable such activities may be, they were not contemplated by constitution to be paid for from funds of the public school system.

Some consideration has been given to the use of public school property for other than strictly school purposes in states wherein the constitution is silent on the subject and no statutory authorization is given, thus making the grant of use illegal. This theory would not be applicable in California wherein an express statute authorizes use for other purposes.

The objection with relation to the diversion of funds is answered by the following: "Except in a few of the so-called extreme cases which deny the power to permit other uses of school property, the second objection [as to the diversion of moneys raised by taxation for a specified purpose, and that such moneys may not be used for private purposes] is given little consideration as being conclusive of the illegality of the use, on the theory that, where the primary purpose to be subserved is legitimate, the expenditure of moneys secured through taxation is legal notwithstanding incidental uses are made thereof for otherwise authorized purposes. Consequently the wording and import of the statutes prescribing the powers and duties of those charged with the care of school property is to a large extent determinative of whether the particular use in question will be allowed." (86 A. L. R., p. 1195.) The legislature undoubtedly gave thought to the expenditure of school funds for incidental purposes, as shown by sections 6.770, 6.771, 6.772, *supra*, of the School Code.

Under all of the circumstances, in view of the weight of authority, it must be held that unless there is a violation of an express provision of the constitution, respondents' position is not well taken. If the board is aggrieved, relief may be sought through the legislature, not by judicial decision.

The judgment is reversed.

Peters, P. J., and Jones, (B. C.) J. *pro tem.*, concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 26, 1942.