[L. A. No. 20584. In Bank. Mar. 31, 1949.]

CALIFORNIA TRUST COMPANY (a Corporation), as Executor, etc., Appellant, v. JOHN BENNETT, Respondent.

Lindstrom & Bartlett and William C. Bartlett for Appellant.

Marshall & Farnham, Walhfred Jacobson and O. E. Farnham for Respondent.

GIBSON, C. J.—The executor of the will of Charlotte Bennett, deceased, appeals from a judgment awarding to defendant, the husband of decedent, the sum of $7,950 which was originally her separate property. The money was in a safe deposit box at the time of her death, and the principal question presented on appeal is whether the record supports the trial court's conclusion that defendant and his wife held the contents of the box in joint tenancy.

The box was rented from a bank by decedent in August, 1945, about six months before her death. At that time she told the bank clerk that she wanted her husband to have access to the box and that she wanted him to have its contents if she should die. The clerk then gave her a signature card entitled "Co-Renters Agreement (Survivor to Have Exclusive Right of Access)" which provided as follows: "The undersigned hereby rent the above numbered safe deposit box. . . . We jointly and severally agree with you and with each other that: 1. Right of access to said box shall be had and surrender of the same be made by either of us without consent of or notice to the other. 2. We will immediately notify the Bank of the death of any person who at the time of his death had the right or privilege of access to said safe deposit box and will not seek access to said box at any time after the death of such person until it has been examined and released in accordance with all inheritance and estate tax laws and regulations then in effect. . . . 4. Upon the death of either of us, the survivor is and shall for every purpose be the sole renter of said box, with the exclusive right of access thereto and possession of the contents thereof. We hereby, jointly and severally, agree to save you, your suc-

cessors and assigns, harmless from and against any and all demands, liabilities, loss, damages, or expense of whatsoever kind or nature, including attorneys' fees, which you shall at any time sustain or incur by reason or in consequence of your relying or acting upon any of the agreements, declarations, conditions, and regulations contained herein or printed on the reverse of the aforesaid rental receipt. This agreement shall be binding upon the heirs, legatees, devisees, administrators, executors, successors and assigns of each of the undersigned. . . ."

Defendant testified that when decedent brought the card home for him to sign she told him that if anything happened to her she wished him to have the contents of the box. Decedent's sister testified that decedent placed $8,000 "in her own box in the name of" defendant husband.

Plaintiff executor contends that the judgment must be reversed, arguing (1) that section 683 of the Civil Code requires a writing for the creation of a joint tenancy interest in personal property, (2) that the rental card is insufficient standing alone to satisfy this statutory requirement, and (3) that the decedent's declarations and the circumstances surrounding the execution of the rental card are not admissible to explain and amplify its terms.

The general statutory provisions relating to the creation of a joint tenancy are contained in section 683 of the Civil Code which reads: "A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or *by transfer . . . from a husband and wife when holding title as community property or otherwise to themselves or to themselves and others when expressly declared in the transfer to be a joint tenancy. . . . A joint tenancy in personal property may be created by a written transfer, instrument or agreement. Provisions of this section shall not restrict the creation of a joint tenancy in a bank deposit as provided for in the Bank Act.*"* The italicized portion was added in 1935.†

---

*No contention is made that the Bank Act referred to in section 683 is applicable here. (See 1 Stats. 1909, p. 87, as amended; 1 Deering's Gen. Laws, Act 652, § 15a.)

†Section 683 of the Civil Code, prior to the amendment of 1935, read: "A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants."

Prior to the 1935 amendment, joint tenancies in personal property could be created by both oral and written agreements. (*Wheeland* v. *Rodgers,* 20 Cal.2d 218, 221 [124 P.2d 816]; *Estate of Gaines,* 15 Cal.2d 255, 260 [100 P.2d 1055]; *Estate of Harris,* 9 Cal.2d 649, 654 [72 P.2d 873]; *Estate of Harris,* 169 Cal. 725, 726 [147 P. 967].) The first question, therefore, is the effect of the addition in 1935 of the sentence: "A joint tenancy . . . may be created by a written transfer, instrument or agreement."

In our opinion this provision is mandatory, and under it joint tenancies may be created only by a writing. Any other construction would render the sentence meaningless. If it were construed as merely permissive in nature, the amendment would constitute but an idle act on the part of the Legislature, ineffective except as a partial declaration of the pre-existing law which had always permitted the creation of joint tenancies by a writing. The fact that the word "may" was used is not conclusive, since it is well settled that permissive words may be interpreted as mandatory where such construction is necessary to effectuate the legislative intent. (See *Uhl* v. *Badaracco,* 199 Cal. 270, 282 [248 P. 917]; *Driscoll* v. *East-West Dairymen's Assn.,* 52 Cal.App.2d 468, 472 [126 P.2d 647]; *Goodman* v. *Board of Education,* 48 Cal. App.2d 731, 737 [120 P.2d 665]; 3 Sutherland, Statutory Construction [3d ed., 1943] p. 81; Crawford, Statutory Construction [1940] p. 521.)

Defendant relies on several cases decided since the 1935 amendment which have stated, without discussion of the change, that joint tenancies in personal property may be created orally. (See *Wheeland* v. *Rodgers,* 20 Cal.2d 218, 221 [124 P.2d 816]; *Estate of Harris,* 9 Cal.2d 649 [72 P.2d 873]; *White* v. *Bank of America,* 53 Cal.App.2d 831, 834 [128 P.2d 600].) In the Wheeland and Harris cases the transactions involved took place prior to the date of the amendment, and the White case concerned written instruments. These cases, therefore, are of no assistance to us in determining the proper interpretation to be given the amendment.

 Defendant contends, nevertheless, that even though section 683 as amended requires a writing, there is an exception where the transfer is between husband and wife. Reliance is placed upon *Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905], which held that, where a husband and wife acquired property through deeds purporting to create a joint tenancy, evidence was admissible to show that the property was

acquired with community funds with the intention that it was to remain part of the community. This decision carried out the well-established policy that the use of common law forms of conveyances should not be permitted to alter the community character of real property contrary to the intention of the parties. There is no claim that the property involved here was ever community property, or that it was the intention of the parties to convert it into community property, and, therefore, the reasoning in the Tomaier decision has no application to the facts of this case. Moreover, the statute specifically mentions transfers between husband and wife but does not exempt them from its provisions. Accordingly, we see no basis in the present case for making an exception to the statutory requirement that there be a writing to create a joint tenancy in personalty.

Defendant does not contend that the rental card standing alone is sufficient to establish a joint tenancy in the contents of the safe deposit box, and it is clear that it is not. It has been held that a rental agreement practically identical to the one here involved did not affect title to the contents of the box. (*Security-First Nat. Bank* v. *Stack*, 32 Cal.App.2d 586 [90 P.2d 337]; see *Estate of Dean*, 68 Cal.App.2d 86, 90 et seq. [155 P.2d 901].) In the Dean case the card signed by the renters was entitled "Joint Tenants (One signature required—Right of Survivorship)," but its provisions were similar to those in the present case. The court held that parol evidence was admissible to show the intention of the parties, stating that "the caption and the body of the writing are inconsistent with each other." In the present case, however, there is no inconsistency between the body of the card and its caption, which reads: "Co-Renters Agreement (Survivor to Have Exclusive Right of Access.)" With respect to the body of the card in the Dean case, which was substantially the same as that of the card involved here, the court said: ". . . no express declaration was made in the body of the writing that the title to the property was to be held jointly or in any manner, or that the survivor should be the owner of the property. There is a declaration, however, in the body of the writing that the survivor shall be the sole renter of the box 'with the exclusive right of access thereto and possession of the contents thereof.' Appellant's contention that said last mentioned provision shows the intention to establish ownership cannot be sustained. . . . Neither the word 'title' nor the word 'ownership' is used in that provision or used at

all on the card. Said provision is a part of a paragraph of the writing which relates to absolving the bank from liability for the acts of the survivor in removing property from the box. . . . It appears . . . that the provision . . . was not intended to be, and was not, a declaration as to title or ownership of the contents of the box. . . ." (68 Cal.App.2d, at pp. 91, 92.)

It is asserted, nevertheless, that decedent's declarations and the circumstances surrounding the renting of the safe deposit box may be used to interpret the rental card, and that, when interpreted with this evidence, the card is sufficient to satisfy the statutory requirement of a writing. ■ It is well settled that where a statute requires the formality of a writing for the creation of an interest in property, it must contain words indicating an intent to transfer such interest, and in the absence of words which could be interpreted to show such intent, no parol evidence will be admitted. (See Code Civ. Proc., §§ 1856, 1860; *Cordano* v. *Wright,* 159 Cal. 610, 618 [115 P. 227, Ann.Cas. 1912C 1044] ; *McGarrigle* v. *Roman Catholic Orphan Asylum,* 145 Cal. 694, 696 [79 P. 447, 104 Am.St.Rep. 84, 1 L.R.A.N.S. 315] ; *Litten* v. *Warren,* 11 Cal. App.2d 635, 637 [54 P.2d 39] ; 9 Wigmore on Evidence [3d ed. 1940] § 2453.) ■ In the present case, the rental card is clear and, as we have seen, it does not purport to affect the title to the contents of the box, but relates only to rights of possession and access. (See *Estate of Dean,* 68 Cal.App.2d 86, 91 [155 P.2d 901] ; *Security-First Nat. Bank* v. *Stack,* 32 Cal.App.2d 586, 591 [90 P.2d 337].) Accordingly, the parol evidence could not be used to amplify the terms of the rental card so as to create a joint tenancy.

The conclusion we have reached makes it unnecessary to discuss the other claims of error with reference to refusal to admit evidence.

The judgment is reversed.

Shenk, J., Traynor, J., and Spence, J., concurred.

Edmonds, J., did not participate herein.

CARTER, J.—I dissent.

Assuming that the creation of a joint tenancy in personal property must be in writing, I believe that the safe deposit box rental agreement creates an ambiguity as to whether a joint tenancy in the contents (money) of the box was created

which permits the use of parol evidence to explain it. It will be recalled that the rental agreement was headed "Co-RENTERS AGREEMENT (SURVIVOR TO HAVE EXCLUSIVE RIGHT OF ACCESS)." (Emphasis added.) The use of the word "survivor" is the common expression used to create joint tenancies. Hence we have some indication that there was an intent to create a joint tenancy. The agreement goes on to provide that the parties each agrees with the other that each has right of access to the box *without consent or notice to the other*. That is to say, each, to the complete exclusion of the other, may have access to the box, and implicit therein, it is reasonable to assume that he may remove the contents and appropriate same to his own use. In addition, it is provided that "Upon the death of either of us, the *survivor* is and shall for every purpose be the sole renter of said box, with the *exclusive right* of access thereto and *possession of the contents* thereof. . . ." (Emphasis added.) Plainly the survivor has exclusive right of possession. That "exclusive" right would bar the estate of the deceased tenant or a representative thereof from possession. In this connection, it should be noted that the rental agreement *expressly provides* that it "shall be binding upon the *heirs*, legatees, devisees, *administrators, executors*, successors and assigns of each of the undersigned." (Emphasis added.) That being the case, the right of the exclusive possession in the survivor is binding upon *all successors* of the deceased. *Therefore, no one could ever gain any right to possession without consent of the survivor.* If no one but the survivor could have possession or any *right* to possession, how could any other person effectively become the owner of the contents? The interest in the property would be split with the heirs holding the bare legal title and the survivor having the right to perpetual exclusive possession. Furthermore, it is to be noted that the survivor is to have the exclusive right of possession "for every purpose," indicating that he has it for the purpose of use and enjoyment to the extent of consumption if he desires.

We must consider the foregoing factors in light of various rules of law. It is presumed "That things which a person possesses are owned by him." (Code Civ. Proc., § 1963[11].) Thus it is clear that giving the right to "possession" may mean that title was intended to be transferred. A situation somewhat analogous is presented in *Woodford's Ex'rs.* v. *Woodford*, 44 N.J.Eq. 79 [14 A. 273], where the testator devised the right of possession of property to his wife. The

court held that ownership was intended to go to the wife, stating: "It is true that, when he comes to state what he understands to be a widow's right in her husband's personal estate, he describes it as a right of possession, but it is quite evident that he uses the word 'possession' in the sense of ownership. He meant a possession without limitation as to time. He does not say that her right to possession shall be limited in duration to her life, nor does he say that the share of his personal estate, which he directs shall go into her possession, shall, on her death, go to some other person. There is no gift over."

All of the foregoing factors point to a reasonable probability that it was intended by the agreement to create a joint tenancy in the contents of the box—to make a gift of the contents—pass title to them. I am not overlooking the arguments that the agreement was merely intended as one for rental and was primarily to protect the bank; (it is to be noted, however, that the agreement expressly states that it is between the joint holders of the box inter se as well as with the bank); that right of possession does not necessarily mean ownership; and that only mere custody was intended. But those things merely illustrate *the inherent ambiguity of the phrasing in the agreement*. The words may, or may not, mean that ownership is to be transferred. From them alone you cannot be sure. Manifestly, therefore, parol evidence was admissible to explain their meaning.

There is ample parol evidence to show that the decedent intended the rental agreement to create a joint tenancy. To illustrate, the bank clerk testified that when the decedent made arrangements for the joint box: "I asked her [decedent] if she would want the survivor to have the contents of the box, if she should pass away, and she said that is what she wanted." Defendant testified: "When she [decedent] asked me to sign that card she said if anything happened to her she wished me to have the contents of the box but named no contents or nothing referring to what was in it or should be in it. She naturally had to tell me something when she asked me to sit down and sign a paper."

In my opinion, this evidence, coupled with the "Co-Renters Agreement," was ample to sustain the finding of the trial court that decedent intended the contents of the box to be held in joint tenancy with defendant, and that he became the owner of such contents by virtue of the right of survivorship arising out of such agreement.

The cases relied upon by the majority opinion should not be controlling. In *Security-First Nat. Bank* v. *Stack*, 32 Cal. App.2d 586 [90 P.2d 337], the court gave no consideration and made no mention of a clause such as exists in the instant case making the promises binding upon the executors, heirs and assigns of the parties. Moreover, the rental agreement there was completely wiped out as a joint tenancy arrangement by the execution by the husband and wife of a written agreement expressly terminating all joint tenancy relations *after* the rental agreement was made. *Estate of Dean,* 68 Cal. App.2d 86 [155 P.2d 901], rather than supporting the majority opinion, is to the contrary. The issue there involved was whether the contents of a safe deposit box was held in joint tenancy. There was a rental agreement similar to that involved in the instant case and, while stating that the agreement did not expressly declare that a joint tenancy was created, also holds that: ''Considering the caption and the body of the writing together and *as a whole,* as appellant asserts should be done in order to ascertain the 'true intention in the minds of the parties,' it appears that it was not expressly declared on the signature card that the property in the box was to be held in joint tenancy; and it appears further that *the writing was uncertain and ambiguous as to whether it was the intention of the parties to create a joint tenancy in the ownership of the contents of the box or to become Co-Renters with the right of joint access to the box and to possession of the contents.* . . . In the present case the signature card, 'standing alone,' was not sufficient to create a joint tenancy, but was uncertain and ambiguous. . . . It appears, contrary to appellant's contention, that the court received parol evidence, and received documentary evidence in addition to the signature card of January 19th, for the purpose of considering it in determining the intention of the decedent in signing the card. The card, being uncertain and ambiguous, such evidence was received properly. The evidence was sufficient to support the findings of the court.'' (Emphasis added.) The majority opinion gives no reason why parol evidence was held to be properly admitted in the Dean case but not in the case at bar.

I would, therefore, affirm the judgment.

Schauer, J., concurred.

Respondent's petition for a rehearing was denied April 28, 1949. Carter, J., and Schauer, J., voted for a rehearing. Edmonds, J., did not participate herein.