T.C. Memo. 1995-537

UNITED STATES TAX COURT

S. VICTORIA WELLS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16962-93.                    Filed November 13, 1995.

Carl F. Agren, for petitioner.

Maria D. Murphy, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined a deficiency in petitioner's 1989 Federal income tax in the amount of $150,027 and an accuracy-related penalty under section 6662(a)[1] in the amount of $30,005.  The issues for our consideration are:  (1)

_____

[1] All section references are to the Internal Revenue Code in effect for the taxable year under consideration, and all Rule references are to this Court's Rules of Practice and Procedure, unless otherwise indicated.

Whether petitioner was the sole owner of a residence for Federal income tax purposes and, thus, required to recognize 100 percent of the gain on its disposition; and (2) whether petitioner is liable for the accuracy-related penalty for substantial understatement of income tax.

## FINDINGS OF FACT

S. Victoria Wells (petitioner) resided in Balboa Island, California, at the time her petition in this case was filed.  On August 25, 1968, petitioner married Thomas F. Wells (Mr. Wells) in the State of California.  On May 28, 1987, petitioner and Mr. Wells separated.  On August 6, 1987, petitioner commenced a proceeding for divorce in the Superior Court of the State of California for Orange County (Superior Court).  A divorce decree was filed on May 17, 1990, dissolving the marriage.  The Superior Court retained jurisdiction to decide child custody and division of marital property issues, and its judgment was filed on June 12, 1991.

While petitioner was married to Mr. Wells, they purchased, as joint tenants, a residence located at 10902 Paddock Lane, Santa Ana, California (Paddock Lane property).  Their property deed was recorded on April 25, 1978.  From April 25, 1978, until May 28, 1987, when petitioner and Mr. Wells separated, the property was their primary residence.  Petitioner continued to reside there after the separation from Mr. Wells.

In or about March 1985, petitioner and Mr. Wells jointly obtained a $190,000 second mortgage on the Paddock Lane property. The mortgagee/lender was American State Bank.

On June 30, 1988, petitioner and Mr. Wells jointly obtained a $200,000 loan from Community Home Loan, Inc. The loan proceeds were used to repay, in full, the prior loan from American State Bank. Surplus loan proceeds of $30,672.40 were distributed to petitioner and Mr. Wells. The surplus loan proceeds were used to satisfy Mr. Wells' outstanding liability for Federal payroll taxes incurred after the separation.

Mr. Wells signed a quitclaim deed (deed) for the Paddock Lane property. The execution date on the deed, June 30, 1988, is the same date as the issuance of the second mortgage. Ultimately, petitioner's attorney obtained and held the deed.

The deed is entitled "Quitclaim Deed" in bold black letters. It provides that "For A Valuable Consideration" Mr. Wells hereby remises, releases, and forever quitclaims to petitioner the Paddock Lane property. The deed is shown as recorded and stamped with the date of June 1, 1989, by the Official Records of Orange County, California. In the upper left corner and the bottom of the instrument, it states that "tax statements" will be mailed to petitioner. In all other respects, the deed is unconditional and regular on its face.

In February 1989, petitioner and Mr. Wells jointly listed for sale the Paddock Lane property with real estate agents. Mr. Wells actively participated in attempting to sell the Paddock Lane property through: (1) Painting the property; (2) selecting the real estate agent; (3) signing the listing agreement; and (4) being involved in the negotiations when an offer was received. During that time, Mr. Wells did not represent or indicate to petitioner that the house was solely her property.

The first real estate listing agreement expired on May 17, 1989, and petitioner listed the property for sale with another realtor. Petitioner wanted to be "in control" of the sale of the Paddock Lane property. On August 17, 1989, the Paddock Lane property was sold for $630,000. Petitioner received a prerelease payment of $25,000 and a check in the amount of $37,249.53 in sale proceeds. Mr. Wells did not receive any of the proceeds from the sale of the Paddock Lane property.

On August 2, 1989, Mr. Wells' attorney wrote a letter to petitioner stating that the deed (from Mr. Wells to petitioner) "had been tendered on a conditional delivery * * * [and] recorded without Mr. Wells' knowledge or consent." The letter further stated: "Also, please be advised that we reserve the right to contest the legal effect of the delivery of the deed which was apparently recorded with respect to the Paddock Lane property and the overall consideration relating thereto." On August 8, 1989,

petitioner's attorney acknowledged and agreed to Mr. Wells' "reservation of the right to contest the legal effect of the delivery and the overall consideration relating thereto."

On Mr. Wells' 1989 Federal income tax return, he claimed the deduction for the home mortgage interest and the real property taxes on the Paddock Lane property. The proceeds from the sale of the Paddock Lane property were considered in the overall settlement or distribution of the marital estate on June 12, 1991.

Petitioner reported in her 1989 Federal income tax return that she sold her home for $630,000. She further reported selling expenses of $58,933, which produced $571,067 as the amount realized on the sale. Petitioner then reported a long-term capital gain of $10,199 on the sale.

Petitioner's basis in the Paddock Lane property was $229,868 at the time of the August 17, 1989 sale.[2] Selling expenses of the Paddock Lane property were $50,884.[3]

---

[2] Respondent apparently computed the deficiency without taking into account petitioner's basis in the property. We will give effect to the parties' stipulation as to the basis of the Paddock Lane property.

[3] As noted above, petitioner reported $58,933 as expenses related to the sale of the Paddock Lane property. However, we will give effect to the parties' stipulation that the selling expenses were $50,884.

OPINION

Respondent determined that the recording of the deed from Mr. Wells to petitioner caused her to be the sole owner of the property. As a result, respondent determined that petitioner should have reported the entire net realizable gain on the sale of the Paddock Lane property. Petitioner contends that the deed was invalid and of no effect because there was no specific intent to transmute the Paddock Lane property to separate property. As a consequence, petitioner argues, even though formal title vested in her, the Paddock Lane property was still community property.[4] Thus, petitioner claims that she is not liable for the total amount of gain on the sale of the property. Petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Generally, sections 61 and 1001 require a taxpayer to recognize income in the year the gain is realized. The owner is the person responsible for reporting the gain on the sale of property.

State law controls the nature of the legal interest of the taxpayer. Once ownership is decided under State law, Federal law

---

[4] Under California law, joint tenancy property acquired during the marriage is presumed to be a community property asset, for purposes of division of such property in a marriage dissolution proceeding. Former Cal. Civ. Code sec. 4800.1(b) (West Supp. 1994), which was repealed and is now codified in Cal. Fam. Code sec. 2581 (West 1994).

is utilized to decide the tax consequences.  <u>Aquilino v. United States</u>, 363 U.S. 509, 512-513 (1960).  In <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456 (1967), the U.S. Supreme Court held that pursuant to <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), "state law as announced by the highest court of the State is to be followed."  <u>Commissioner v. Estate of Bosch</u>, <u>supra</u> at 465. Moreover, the court explained:

> the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law.  If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State.  In this respect, it may be said to be, in effect, sitting as a state court.  [<u>Id.</u>; citation omitted.]

Thus, our inquiry here focuses on whether, under California law, petitioner was the sole owner of the Paddock Lane property at the time of the sale.

California Civil Code section 5110.710 (West 1983) provides that, subject to sections 5110.720 through 5110.730, inclusive, married persons may, by agreement or transfer, with or without consideration, do any of the following:  (a) Transmute community property into separate property of either spouse; (b) transmute separate property of either spouse into community property; or

(c) transmute separate property of one spouse into separate property of the other spouse.[5]

California Civil Code section 5110.730(a) requires that a valid transmutation be made not just in writing, but in "writing [made] by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

The issue here is whether Mr. Wells validly transmuted his one-half joint tenancy interest in the Paddock Lane property to petitioner.

The California Supreme Court in In re Estate of MacDonald, 794 P.2d 911 (Cal. 1990), considered the requirements of a written transmutation under California Civil Code section 5110.730(a). The MacDonalds had both previously been married and had children from their prior marriages. After several years of marriage to Mr. MacDonald, Mrs. MacDonald discovered that she was terminally ill. Wanting to leave separate property to her children, Mrs. MacDonald and her husband obtained legal and financial advice and divided their property into separate estates before her death. One of the items that they did not address was the husband's pension plan benefits in which Mrs. MacDonald

_____

[5] Former Cal. Civ. Code secs. 5110.710 through 5110.730 (West 1983) were in effect at the time of the transmutation in this case. These statutes were repealed and are now codified in Cal. Fam. Code secs. 850-853 (West 1994).

possessed a community property interest. Upon retirement, the husband deposited the funds from these plans into three individual retirement accounts (IRA's). The accounts were solely in the husband's name, with the designated beneficiary of each being a revocable living trust which had been created by the pension plan. The husband's children, in turn, were the beneficiaries of that living trust. The forms for the IRA accounts contained a space for the signature of a spouse who was not designated as the sole primary beneficiary to indicate the spouse's consent to the designation. Mrs. MacDonald signed the consent form. Upon her death, Mrs. MacDonald's estate petitioned to establish its one-half interest in the IRA accounts.

The issue in Estate of MacDonald was whether Mrs. MacDonald had waived her community property interest or whether there had been a transmutation of her community property interest in the pension-IRA's. The court held that Mrs. MacDonald's signature on the space below the consent paragraph did not satisfy California Civil Code section 5110.730(a).

> a writing signed by the adversely affected spouse is not an "express declaration" for the purposes of section 5110.730(a) unless it contains language which expressly states that the characterization or ownership of the property is being changed. [In re Estate of MacDonald, supra at 918.]

In other words, the defect in the writing in Estate of MacDonald was its ambiguity:

It is not possible to tell from the face of the consent paragraphs, or even from the face of the * * * [documents] as a whole, whether decedent was aware that the legal effect of her signature might be to alter the character or ownership of her interest in the pension funds * * * [Id.]

Thus, there was no "express declaration" as required by California Civil Code section 5110.730(a).

The California Supreme Court was aware that its interpretation of California Civil Code section 5110.730(a) would preclude the finding of a transmutation in a case where extrinsic evidence of an intent to transmute existed.  The court stated that "it * * * [was] such reliance on extrinsic evidence for the proof of transmutations which the [California] Legislature intended to eliminate in enacting the writing requirement of section 5110.730(a)."  Id. at 919.  The court's construction of California Civil Code section 5110.730(a) was explained as follows:

Our conclusion honors each of the principles of statutory construction we have discussed.  First, it interprets "express declaration," so as to give significance to all the words of section 5110.730(a).  Second, it effects the intent of the Legislature to create a writing requirement which enables courts to validate transmutations without resort to extrinsic evidence and, thus, without encouraging perjury and the proliferation of litigation.  Third, it is consistent with our interpretation of the similar requirement in section 683.  [Id. at 918; fn. ref. omitted.[6]]

_____

[6] In this allusion to California Civil Code sec. 683, the California Supreme Court is referring to California Trust Co. v.
(continued...)

Although the writing need not contain the words "transmutation", "community property", or "separate property", there must be language that expressly states that the character or ownership of the spouse's interest is being changed. Id. at 919. In addition, the court found that the decedent was the party whose interest in the property was "adversely affected". Id. at 918. In the case before us, the "adversely affected" person is Mr. Wells. He transferred his one-half interest in the Paddock Lane property when he signed and delivered the deed. We do not find persuasive petitioner's contention that she is the "adversely affected" party because she bears the tax burdens of the sale of the Paddock Lane property.

Petitioner argues that there was no express recharacter-ization or change of ownership of the interest in the Paddock Lane property. Specifically, she asserts the deed did not satisfy the express declaration requirement of California Civil Code section 5110.730(a) because it did not contain the phrase "as her sole and separate property". We do not find that phrase to be necessary for purposes of transmuting a real property interest under California Civil Code section 5110.730(a). The

---

⁶(...continued)
Bennett, 204 P.2d 324 (Cal. 1949), in which it determined that parol evidence is not admissible when a statute requires the formality of a writing for the creation of an interest in property.

issuance of and the language contained within the deed was for the purpose of and did cause the transfer of ownership in the Paddock Lane property.[7]

Petitioner additionally argues that there was no intent to transmute the Paddock Lane property into petitioner's sole property.  Under California law, we only consider the face of a written instrument to determine whether the parties intended to transmute property.  Extrinsic evidence is to be disregarded.

> "it is well settled that where a statute requires the formality of a writing for the creation of an interest in property, it must contain words indicating an intent to transfer such interest, and in the absence of words which could be interpreted to show such intent, no parol evidence will be admitted."  [In re Estate of MacDonald, 794 P.2d at 918 (quoting California Trust Co. v. Bennett, 204 P.2d 324, 327 (Cal. 1949)).]

Within the four corners of the deed, we do not find any conditional language regarding delivery of the deed or transfer of the property.  Hence, we do not find persuasive petitioner's argument in that regard.

Petitioner's argument that she had no intention of assuming sole ownership does not reconcile with the recording of the deed on her behalf.  She wanted "control" of the property so it could be sold without interference from her ex-husband.  The settlement of marital property dated June 12, 1991, is premised on the fact

---

[7] Petitioner was represented by two attorneys when Mr. Wells quitclaimed his interest in the Paddock Lane property and when the deed was filed.

that petitioner owned and sold the property.  Having had the advantages of ownership of the Paddock Lane property, we find it inapposite for petitioner to deny the form of the transaction. We hold, in accord with California law, that petitioner was the sole owner of the Paddock Lane property at the time of its sale.

We next consider whether petitioner is liable for the accuracy-related penalty for substantially understating her income tax.  Sec. 6662(b)(2).  A substantial understatement is one that exceeds the greater of 10 percent of the tax required to be shown or $5,000 (in the case of an individual taxpayer).  Sec. 6662(d)(1).  Any understatement is to be reduced by an item for which there is substantial authority for its tax treatment or adequate disclosure.

Petitioner's failure to report the entire gain from the sale of the Paddock Lane property resulted in a $150,027 understatement of income tax.  This amount is in excess of $5,000, and it exceeds 10 percent of the amount of tax required to be shown on the return.  Petitioner has failed to show substantial authority in support of her position that the Paddock Lane property should be deemed community property and that the gain should be divided between petitioner and her ex-husband.

Section 6662(d)(2)(B)(ii) defines a disclosed item as one as to which "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached

- 14 -

to the return".  Next, we must decide whether petitioner adequately disclosed her tax position.  The statute does not prescribe what constitutes adequate disclosure of relevant facts. Schirmer v. Commissioner, 89 T.C. 277, 285 (1987).

This Court has indicated that a taxpayer may satisfy the requirements of adequate disclosure for purposes of section 6662 if he provides sufficient facts on the face of his return that enable the Commissioner to identify the potential controversy involved.  Id. at 286.  We hold that petitioner has satisfied the adequate disclosure requirement.

Petitioner disclosed on her 1989 Federal income tax return the sale of the Paddock Lane property and reported long-term capital gain.  She sold the property for $630,000 and reported $58,933 in expenses related to the sale.  Consequently, the total amount realized was $571,067.  Petitioner reported a basis of $560,868 which, offset against the amount realized, generated a gain of $10,199 on the sale of the Paddock Lane property. Furthermore, petitioner reported she did not intend to utilize the section 1034 basis rollover provision.  Petitioner did not disclose any further information about the sale of the Paddock Lane property.  It is likely that the large basis of the Paddock Lane property resulting in a small long-term capital gain generated respondent's audit.  The information reported was sufficient to apprise respondent of, or to enable respondent to

identify, the potential controversy here; that is, the amount of gain petitioner was required to report.  We hold that petitioner has adequately disclosed the relevant facts relating to the sale of the Paddock Lane property and that she is not liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

Decision will be entered

under Rule 155.