87 F.3d 1319
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HIGHLAND NEIGHBORHOOD WATCH; Letitia E. Pepper, Plaintiffs-Appellants,
v.
RIVERSIDE UNIFIED SCHOOL DISTRICT; James L. Kimble,
Defendants-Appellees.
 No. 94-55033.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1996.
Decided June 12, 1996.
 
 1
 Before: WALLACE, Chief Judge, and T.G. NELSON, Circuit Judges, and BROWNING,[1] District Judge.
 
 
 2
 MEMORANDUM*
 
 I.
 
 3
 Plaintiffs (Highland Neighborhood Watch and its founder Letitia Pepper (collectively "Highland")) sought the use of Defendants' (Riverside Unified School District and its facility manager James Kimble (collectively "Riverside")) elementary school for Highland's meeting place. Highland is a neighborhood watch group formed in response to growing crime in the immediate neighborhood. To meet at Riverside's school facilities, it was necessary to fill out an application in advance of the proposed meeting. In some cases, insurance was required. Although Riverside allowed the first meeting, subsequent requests were denied pursuant to its policy allowing only "youth oriented" groups access to elementary facilities.[2] The youth-only policy was passed in response to reduced school funding. Because Highland ostensibly was not youth oriented, Riverside offered Highland access to nearby high schools or middle schools where the policy did not apply. Highland declined because many of its members were elderly and purportedly did not, or would not, drive at night.
 
 
 4
 Highland filed an action challenging Riverside's youth oriented policy and the insurance requirement claiming that both violated California law (Civic Center Act, Cal.Educ.Code § 40041, et seq. (the "Act")), the California Constitution's Free Speech Clause, and the First Amendment's Free Speech Clause of the United States Constitution. It also concurrently brought claims pursuant to 42 U.S.C. § 1983.
 
 
 5
 Upon cross-motions for summary judgment, the district court entered summary judgment for Riverside. The district court ruled that the policy at issue did not violate California's Civic Center Act. Additionally, the district court ruled that the school facilities were not a public forum, triggering special constitutional protection. This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse. Because our resolution is based on state law grounds, it is unnecessary to address the constitutional issues raised. See Carreras v. Anaheim, 768 F.2d 1039, 1042-43 (9th Cir.1985).
 
 II.
 
 6
 A. Standard of Review.
 
 
 7
 The district court's statutory interpretation presents a question of law and is reviewed de novo by this court. Association of Nat. Advertisers Inc. v. Lungren, 44 F.3d 726, 728 (9th Cir.1994), cert. denied, --- U.S. ----, 116 S.Ct. 62 (1995).
 
 
 8
 B. Analysis.
 
 
 9
 California's Civic Center Act (the "Act") broadly establishes a "civic center at each and every public school facility and grounds within the state" where:
 
 
 10
 the citizens, parent-teachers' associations, camp fire girls, boy scout troops, farmers' organizations, school community advisory councils, senior citizens organizations, clubs, and associations formed for recreational, educational, political, economic, artistic, or moral activities of the public school districts may engage in supervised recreational activities, and where they meet and discuss, from time to time, as they may desire, any subjects and questions which, within their judgment pertain to the educational, political, economic, artistic, and moral interests of the citizens of the communities in which they reside.
 
 
 11
 Cal.Educ.Code § 40041(a). At the same time, the Act gives the governing school boards some authority in fulfilling the Act's objectives:
 
 
 12
 The governing board of any school district may grant the use of the facilities or grounds as a civic center upon the terms and conditions the board deems proper, subject to the limitations, requirements, and restrictions set forth in this article, for any of the following purposes:
 
 
 13
 (1) Public, literary, scientific, recreational, educational, or public agency meetings;
 
 
 14
 (2) The discussion of matters of the general or public interest;
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 (7) Other purposes deemed appropriate by the board.
 
 
 18
 Cal.Educ.Code § 40041(b). The "youth oriented" restriction at issue apparently is derived from a written policy which read:
 
 
 19
 Use of elementary facilities other than playgrounds is restricted to PTA activities and Brownies, Cub Scout, Indian guide, and similar groups.
 
 
 20
 Policy No. 1330 p 1.5.3.
 
 
 21
 The issue on which the court must focus is whether the youth orientated policy conflicts within the Civic Center Act, for if it does, it is invalid. See Ellis v. Board of Education, 27 Cal.2d 322, 325-26, 164 P.2d 1, 2-3 (1945).
 
 
 22
 Preliminarily, it should be noted that subsection (a) creates civic centers wherein the speakers and topics are, in reality, unrestricted. There is no real debate about this. In any event, Highland's request without doubt falls squarely within the permissible bounds of subsection (a). Riverside argues, however, and the district court apparently agreed, that while subsection (a) of the statute widely opened all public school houses for civic center use, subsection (b) gave the governing boards the authority to close the door incrementally in any way deemed proper. Thus, the logic goes, restricting the use of elementary schools based on "youth orientation" is permitted under the scheme. Other than some ambiguity, however, there is no real support for this.
 
 
 23
 Although subsection (b) gives the boards discretion in implementing the use of the state-created civic centers and also authorizes specific applications, its authority is "subject to the limitations, requirements, and restrictions set forth in this article." Cal.Educ.Code § 40041(b) (emphasis added). Subsection (a), which immediately precedes subsection (b) and clearly is within the article, sets forth an unbridled list of topics and speakers allowed within the civic center facilities which exist at "each and every public school facility." Subsection (b), therefore, does not give the boards the discretion to wholly undo subsection (a). Indeed, at a "minimum," the boards, pursuant to their rule making authority, are required to promulgate all "regulations necessary to provide ... [a]id, assistance and encouragement to any of the activities authorized in Section [ ] 40041."[3] Cal.Educ.Code § 40042(1) (emphasis added).
 
 
 24
 The fact that subsection (b) is permissive adds little to Riverside's argument. There can be no doubt that the provision allows the boards--as it must--discretion in deciding how to allocate its civic centers' resources and, at the same time, preserve its scholastic mission. The boards, for example, must regulate the civic centers' activities so they do not damage school grounds or interfere with learning. Cal.Educ.Code § 40042(2), § 40042(3). There is no indication, however, that the discretion provided allows the boards to wholly displace other obligations under the Act. This is exactly what Riverside's policy does. The policy would give certain (yet-to-be-defined) youth oriented groups unfettered civic center access at elementary schools, but deny it to all others, completely ignoring the generous demarcation provided in subsection (a).
 
 
 25
 Thus, there is little that supports Riverside's youth-only policy and, in fact, provisions that compel otherwise. See, e.g., Cal.Educ.Code §§ 40041(b), 40042(1). Additionally, Riverside's position is inconsistent with the California authority which bestows an expansive interpretation regarding the reach of the Act. See Ellis, 27 Cal.2d at 329, 164 P.2d at 5; Howard v. Jarvis Taxpayers Ass'n v. Whittier Union High School Dist., 15 Cal.App.4th 730, 734-35, 19 Cal.Rptr.2d 109, 112-13 (App.1993); Goodman v. Board of Education of San Francisco, 48 Cal.App.2d 731, 736, 120 P.2d 665, 668 (App.1941).
 
 III.
 
 26
 In short, nothing in the text significantly supports Riverside's interpretation while the Act itself, as well as other authority, suggests a contrary reading is far more reasonable. This being so, the policy, at least as applied to Highland, is invalid. The district court's determination that the California Civic Center Act was not offended by the youth-only policy, therefore, was incorrect. Accordingly, the entry of summary judgment for Riverside is REVERSED, and the district court is directed to proceed in a manner consistent with this disposition.
 
 
 
 [1]
 Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir R. 36-3
 
 
 [2]
 Highland met on two other occasions; once as an "exception" to Riverside's policy and once more when the PTA put them on their agenda
 
 
 [3]
 Additionally, § 40043(a), both in its amended and pre-amended versions, also falls within the article and also supports the notion that "nonprofit" organizations, such as Highland, are on equal footing under the scheme with those groups that "promote youth."