TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-1107 |
| of | : | |
| | : | November 21, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE CATHIE WRIGHT, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. In order for the governing board of a school district to permit a religious organization to conduct its services at a school facility, what showing must be made that the religious organization lacks another suitable meeting place for the conduct of its services?

2. May the governing board of a school district permit a religious organization to conduct its services at a school facility for an indefinite period of time?

CONCLUSIONS

1. In order for the governing board of a school district to permit a religious organization to conduct its services at a school facility, no showing must be made that the religious organization lacks another suitable meeting place for the conduct of its services.

2. The governing board of a school district may indefinitely renew the temporary permit of a religious organization to conduct its services at a school facility.

ANALYSIS

The Civic Center Act (Ed. Code, §§ 40041-40048; "Act")[1] expresses the Legislature's intent to create a public forum for virtually all forms of expression - artistic, political, religious, economic, educational, and moral - at each public school in the state. (76 Ops.Cal.Atty.Gen. 52, 53 (1993).) Specifically, section 40041 provides as follows:

"(a) There is a civic center at each and every public school facility and grounds within the state where the citizens, parent-teachers' associations, camp fire girls, boy scout troops, farmers' organizations, school-community advisory councils, senior citizens' organizations, clubs, and associations formed for recreational, educational, political, economic, artistic, or moral activities of the public school districts may engage in supervised recreational activities, and where they may meet and discuss, from time to time, as they may desire, any subjects and questions which in their judgment pertain to the educational, political, economic, artistic, and moral interests of the citizens of the communities in which they reside.

"(b) The governing board of any school district may grant the use of school facilities or grounds as a civic center upon the terms and conditions the board deems proper, subject to the limitations, requirements, and restrictions set forth in this article, for the following purposes:

"(1) Public, literary, scientific, recreational, educational, or public agency meetings.

"(2) The discussion of matters of general or public interest.

"*(3) The conduct of religious services for temporary periods, on a one-time or renewable basis, by any church or religious organization that has no suitable meeting place for the conduct of the services, provided the governing board charges the church or religious organization using the school facilities or grounds a fee as specified in subdivision (d) of Section 40043.*

"(4) Child care or day care programs to provide supervision and activities for children of preschool and elementary school age.

"(5) The administration of examinations for the selection of personnel or the instruction of precinct board members by public agencies.

"(6) Supervised recreational activities including, but not limited to, sports league activities for youths that are arranged for and supervised by entities, including

---

[1] All statutory references herein are to the Education Code.

religious organizations or churches, and in which youths may participate regardless of religious belief or denomination.

"(7) Other purposes deemed appropriate by the governing board." (Italics added.)[2]

We are asked herein to focus on the meaning and effect of two of the limitations contained in section 40041, subdivision (b)(3). What showing must be made that the religious organization "has no suitable meeting place for the conduct of the services," and does a permit "for temporary periods, on a one-time or renewable basis" include a permit for an indefinite period of time?[3]

1. Suitable Meeting Place

We commence our analysis by considering the constitutional validity of the requirement that a religious organization must demonstrate that it has no suitable meeting place for the conduct of its services in order to qualify for renting a school facility under the terms of section 40041. It is, of course, well established that a statute should be construed in the light of constitutional constraints. (See *Young* v. *Haines* (1986) 41 Cal.3d 883, 898; 76 Ops.Cal.Atty.Gen. 270, 274 (1993).) However, to the extent that the statutory provision is constitutionally infirm, it is unenforceable and void and must be disregarded. (65 Ops.Cal.Atty.Gen. 261, 265 (1982).)

The constitutional provision against which we must test the language of section 40041 is the First Amendment of the United States Constitution. It provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." This restriction against the exercise of federal power is applicable to state and local governments, including school districts, by virtue of the due process clause of the Fourteenth Amendment. (See *Hazelwood School District* v. *Kuhlmeier* (1987) 484 U.S. 260, 266; *Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503, 507-509; *Everson* v. *Board of Educ.* (1947) 330 U.S. 1, 8; 77 Ops.Cal.Atty.Gen. 56, 57-58 (1994).

Similar to the federal Constitution, subdivision (a) of section 2 of article I of the California Constitution states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." The California Constitution has been construed as being more protective of First Amendment rights than the federal Constitution. (*Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal.3d 501, 519; *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 903, 907-910; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658; *Women's Internat. League Etc. Freedom* v. *City of Fresno* (1986) 186 Cal.App.3d 30, 37-38.) Nevertheless, we believe that an examination of the issues

---

[2] Subdivision (d) of section 40043 specifies a fee for churches and religious organizations of "an amount at least equal to the district's direct costs."

[3] Nothing herein is intended to suggest that the use of school facilities or grounds for religious or other communicative purposes may be allowed to impair or interfere with the use of the property for the instructional or instructional-related activities for which it was established. (75 Ops.Cal.Atty.Gen. 232, 237-238 (1992).)

to be resolved herein requires similar treatment under the two Constitutions (see *California Teachers Assn* v. *Governing Board* (1996) 45 Cal.App.4th 1383, 1391-1392; *Savage* v. *Trammell Crow Co., Inc.* (1990) 223 Cal.App.3d 1562, 1572-1573; *U.C. Nuclear Weapons Lab Conversion Project* v. *Lawrence Livermore Laboratory* (1984) 154 Cal.App.3d 1157, 1164-1165; 75 Ops.Cal.Atty.Gen. 232, 238 (1992)), and thus we will rely upon both federal and California cases in our analysis.

Here section 40041 imposes a requirement peculiar to religious organizations alone.[4] They must first prove a lack of another suitable meeting place in order to rent a school facility. Does this requirement comport with the First Amendment?

To answer this question we first determine the type of "public forum" that is created by the Act at each school facility. In 76 Ops.Cal.Atty.Gen. 52, *supra*, and 75 Ops.Cal.Atty.Gen. 232, *supra*, we described the civic center area of each school as a "designated public forum" for purposes of the First Amendment. (See *American Civil Liberties Union* v. *Board of Education* (1963) 59 Cal.2d 203, 208; *Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 540; *Goodman* v. *Board of Education* (1941) 48 Cal.App.2d 731, 734-738.) In *Hazelwood School District* v. *Kuhlmeier*, *supra*, 484 U.S. at 267, the court explained:

> ". . . The public schools do not possess all of the attributes of streets, parks, and other traditional public forums that `time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' [Citations.] . . . [S]chool facilities may be deemed to be public forums . . . if school authorities have `by policy or by practice' opened those facilities for indiscriminate use by the general public,' [citation], or by some segment of the public, such as student organizations. [Citations.]"

In *Perry Ed. Assn.* v. *Perry Local Educators' Assn.* (1983) 460 U.S. 37, 45, the court described a designated public forum as "public property which the State has opened for use by the public as a place of expressive activity." (See *International Soc. For Krishna Consciousness, Inc.* v. *Lee* (1992) 505 U.S. 672, 678; *Cornelius* v. *NAACP Legal Defense & Ed. Fund* (1985) 473 U.S. 788, 802; *Widman* v. *Vincent* (1981) 454 U.S. 263, 267.) Such is clearly the case here.

As a designated public forum, a school's civic center may be subjected to `[r]easonable time, place, and manner regulations"; however, any "content-based prohibition must be narrowly drawn to effectuate a compelling state interest." (*Perry Ed. Assn.* v. *Perry Local Educators' Assn.*, *supra*, 460 U.S. at 46; accord, *International Soc. For Krishna Consciousness, Inc.* v. *Lee*, *supra*, 505 U.S. at 678; *Cornelius* v. *NAACP Legal Defense & Ed. Fund*, *supra*, 473 U.S. at 800.) In effect subdivision (b)(3) of section 40041 excludes from a school's civic center any religious organization that has another suitable meeting place for the conduct of its services. Is such "content-based prohibition" justified by a compelling state interest and narrowly drawn to achieve that end?

---

[4] A similar limitation applies to a specified group of "nonprofit organizations, and clubs or associations organized to promote youth and school activities . . ." where the authorization for such use is otherwise mandatory (§ 40043, subd. (a)) rather than permissive (§ 40041, subd. (b)).

Since "the Legislature expressed its intent to include religious expression in the vast array of expressive activity listed" (76 Ops.Cal.Atty.Gen., *supra*, at 56), such expression cannot be perceived as inherently incompatible with the general purposes served by a school's civic center. We have been apprised of no compelling state interest for the exclusion based upon the availability of alternative venues. Whether there exists another suitable place for the conduct of religious services simply has no bearing upon the compatibility of such a use on the other uses of a school's civic center.

Nor may a compelling state interest be predicated upon an interest the state has in avoiding a violation of the establishment clause of the First Amendment. (Cf. *Rosenberger* v. *Rector & Visitors of Univ. of Va.* (1995) 515 U.S. ___, 115 S.Ct. 2510, 132 L.Ed.2d 700; *Widmar* v. *Vincent*, *supra*, 454 U.S. at 271.)[5] The religious services would not be conducted during school hours and clearly would not be sponsored by the school. Given that the property would be used by a wide variety of private organizations, there would be no realistic danger that the community would perceive the school district as endorsing religion, and any benefit to religion would be merely incidental. (*Lamb's Chapel* v. *Center Moriches Union Free School Dist.* (1993) 508 U.S. 384, 395.) Thus the use of the school's civic center by religious organizations without discriminatory limitation would have a secular purpose, would not have the principal or primary effect of advancing or inhibiting religion, and would not foster an excessive entanglement with religion. (*Ibid.*; *Lemon* v. *Kurtzman* (1971) 403 U.S. 602; 76 Ops.Cal.Atty.Gen., *supra*, at 54-59.)

Because no compelling state interest may be found for the exclusion of religious organizations based upon the availability of alternative venues, such a limitation imposed upon an otherwise permitted use is constitutionally infirm. Accordingly the use authorized in subdivision (b)(3) of section 40041 must be construed in the absence of such limitation, inasmuch as we believe that the provision "is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute." (*Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 791; 65 Ops.Cal.Atty.Gen., *supra*, at 266.)

We conclude that a religious organization need not establish that it lacks another suitable meeting place for the conduct of its services in order to rent a school facility under the provisions of section 40041.

2. Renewable Temporary Periods

The second inquiry is whether a religious organization may be allowed to conduct its services at a school facility for an indefinite period of time. We conclude that the governing board of a

---

[5] The First Amendment provides in part: "Congress shall make no law respecting an establishment of religion . . . ." This constitutional safeguard is made applicable to the states through the Fourteenth Amendment. (*Abington School Dist.* v. *Schempp* (1963) 374 U.S. 203, 205; *Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 303.) Similarly under section 4 of article I of the California Constitution, the "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed," and "[t]he Legislature shall make no law respecting an establishment of religion." (See *Ellis* v. *City of La Mesa* (9th Cir. 1993) 990 F.2d 1518, 1524-1525; *Hewitt* v. *Joyner* (9th Cir. 1991) 940 F.2d 1561, 1567; *Fox* v. *City of Los Angeles* (1978) 22 Cal.3d 792, 796; *Feminists' Women's Health Center* v. *Philibosian* (1984) 157 Cal.App.3d 1076, 1092.)

school district may indefinitely renew the temporary permit of a religious organization to conduct its services at a school facility.

Section 40041, subdivision (b)(3) provides for the conduct of religious services "for temporary periods, on a one-time or renewable basis . . . ." In construing this language, we are guided by well established principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.)

The term "temporary" commonly means "lasting for a time only: existing or continuing for a limited time: impermanent . . . ." (Webster's Third New Internat. Dict. (1971) p. 2353.) To "renew" is "to make new again . . . to begin again . . . to restore to fullness or sufficiency . . . ." (*Id*., at p. 1922.) In *State Farm Mut. Auto. Ins. Co.* v. *Johnston* (1973) 9 Cal.3d 270, 273, the court defined the term "temporary" as follows:

". . . `Temporary' is a word of much elasticity and considerable indefiniteness. [Citation.] It has no fixed meaning in the sense that it designates any fixed period of time. [Citation.] As commonly accepted, `temporary' is an antonym of `permanent.' [Citation.]"

Nothing in the phrase "for temporary periods, on a . . . renewable basis" suggests a limitation upon the number of times the permitted temporary use may be renewed. The fact that a permit may be consecutively renewed does not transform the temporary permit into a permanent one. (Cf., *People* v. *Kwolek* (1995) 40 Cal.App.4th 1521, 1530.)

We believe that the renewal of a temporary permit under the terms of section 40041 may continue to occur for an indefinite, i.e., "being of a nature that is not or cannot be clearly determined . . . having no exact limits . . . not clearly fixed" (Webster's Third New Internat. Dict., *supra*, at 1147) period of time. The statutory language itself would not preclude the school board from indefinitely renewing the temporary permit.[6]

It is concluded that subdivision (b)(3) of section 40041 does not limit the renewability of the temporary use permit for a school facility by a religious organization. Such temporary permit may be renewed indefinitely.

\* \* \* \* \*

---

[6] It is assumed for purposes of this discussion that the religious organization would not be favored over other authorized uses. For example, there may be a number of rooms in the school's civic center available for use by a variety of organizations, all of which would be accommodated.