[No. A091894. First Dist., Div. Three. Feb. 28, 2001.]

Estate of EVERETT L. BIBB, JR., Deceased.
DOZIER BIBB, Petitioner and Appellant, v.
EVELYN BIBB, Objector and Respondent.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, part III of this opinion is not certified for publication.

**COUNSEL**

James P. McBride for Petitioner and Appellant.

Richard H. Bartke for Objector and Respondent.

**OPINION**

**WALKER, J.**—Family Code section 852, subdivision (a), provides: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."[1] The issues we address in the published portion of this opinion are: (1) whether a grant deed signed by a husband transferring his separate property interest in real property to himself and his wife as joint tenants satisfies the "express declaration" requirement of section 852, subdivision (a); and (2) whether an

---

[1]All further statutory references are to the Family Code, unless otherwise specified.

unsigned computer printout, entitled "DMV Vehicle Registration Information," reflecting that an automobile, which was previously registered in the husband's name alone, was reregistered in the names of the husband *or* the wife, satisfies the requirements for a valid transmutation under section 852, subdivision (a). We hold that the grant deed in this case satisfied the express declaration requirement of section 852, subdivision (a), since it contained on its face a clear and unambiguous expression of intent to transfer the real property interest. Because the subject real property was validly transmuted into property held in joint tenancy, it became the wife's separate property upon the husband's death and, therefore, was properly excluded from the husband's probate estate. We further hold, however, that the DMV (Department of Motor Vehicles) printout did not satisfy the requirements for a valid transmutation under the subject statute and, therefore, the automobile should have been included in the probate estate as the husband's separate property. In the unpublished portion of this opinion, we reject the claim that the husband's *premarriage* gift of his separate property jewelry to the wife was invalid under the transmutation writing requirements of section 852, subdivision (a). Thus, we reverse the judgment as to the vehicle, but affirm it in all other respects.

### FACTS AND PROCEDURAL BACKGROUND

Decedent, Everett L. Bibb, Jr. (Everett), and his first wife, Ethel Bibb (Ethel), had one child, Dozier Bibb (Dozier), appellant herein. During his marriage to Ethel, Everett purchased a lot in Berkeley, California, and constructed an apartment building thereon. Ethel died on November 25, 1977.

Everett began dating Evelyn Bibb (Evelyn), respondent herein, in 1988 or 1989. On January 29, 1991, Everett purchased a Rolls Royce automobile, and registered it in his name alone. After their marriage, the Rolls Royce was reregistered in 1995 in the names of Everett *or* Evelyn. In 1992, prior to their marriage, Everett gave Evelyn an engagement and wedding ring set that had belonged to Ethel. Everett married Evelyn in December of 1992. Evelyn testified that, after their marriage, money was used from a joint account to pay the man from whom Everett had purchased the Rolls Royce and to pay for maintenance and repairs on the vehicle.

In the latter part of 1994, Everett applied for a $225,000 loan, which was to be secured by the Berkeley property and was to be used, in part, to renovate the apartment building located thereon. Everett was unable to qualify for the loan with his own credit. In order to qualify for the loan based upon his wife's good credit, Everett signed a grant deed on January 24,

1995, conveying the real property from himself to himself and Evelyn, "his wife as joint tenants." Evelyn signed the note secured by a deed of trust on the subject property.

After having suffered a stroke in February of 1995, Everett died intestate on September 6, 1995. After Everett's death, Evelyn reregistered the Rolls Royce in her name alone, and, by signing an affidavit terminating joint tenancy, took title to the Berkeley property in her name alone.

Evelyn filed a petition for probate of Everett's estate on January 27, 1999. On November 15, 1999, Dozier filed a petition to establish the estate's ownership of the Berkeley property, the Rolls Royce and the wedding ring set, contending that the property had not been validly transmuted from Everett's separate property under section 852, subdivision (a). The trial court heard Dozier's petition on May 22, 2000, and filed a statement of decision denying it on May 26, 2000. Thereafter, Evelyn submitted proposed findings and order, denying Dozier's petition as to the Berkeley property, the Rolls Royce and the ring set. Referring to the statement of decision, the trial court crossed out the proposed findings and signed the order. Dozier submitted a proposed judgment in accordance with the order, which judgment was adopted and filed by the trial court on July 11, 2000.

On July 13, 2000, Dozier filed a timely notice of appeal from the trial court's July 11, 2000 judgment denying his petition to establish the estate's ownership of the subject property.

## DISCUSSION

I. *The Real Property.*

Relying on *Estate of MacDonald* (1990) 51 Cal.3d 262, 272 [272 Cal.Rptr. 153, 794 P.2d 911] (*MacDonald*), Dozier contends that the grant deed purporting to transmute Everett's separate interest in the Berkeley property into an interest owned as joint tenants by Everett and Evelyn does not satisfy the "express declaration" requirement of section 852, subdivision (a), because it does not contain language " 'expressly stat[ing] that the characterization or ownership of the property [was] being changed.' " Evelyn responds that the real property is presumed to be held in joint tenancy, as described in the grant deed, and, therefore, is excluded from probate under Probate Code section 6600, subdivision (b)(1).

The "express declaration" requirement for a valid transmutation of property under section 852, subdivision (a), was construed by the Supreme Court

in *MacDonald, supra,* 51 Cal.3d 262.[2] The property at issue in *MacDonald* was the $266,557.90 disbursement from the husband's community property pension plan. (*MacDonald, supra,* at p. 265.) Those funds were placed into three IRA accounts, which were opened in the husband's name alone, with the designated beneficiary of each a revocable living trust that left the bulk of the corpus to his children from a prior marriage. (*Ibid.*) Under "consent paragraphs," the IRA account agreements required the signature of a spouse not designated as the sole primary beneficiary to consent to the designation. (*Ibid.*) Mrs. MacDonald signed the consent paragraphs for all three IRA accounts. (*Ibid.*) Because the consent paragraphs were signed by Mrs. Mac-Donald, there was no dispute that the documents satisfied the requirements of a writing that was "made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (§ 852, subd. (a); *MacDonald, supra,* at pp. 267-268.) Thus, the specific issue addressed by the court in MacDonald was whether the consent paragraphs "constitute 'an express declaration' for the purposes of section [852, subdivision (a)]." (*MacDonald, supra,* at p. 268.)

The court, in *MacDonald, supra,* 51 Cal.3d at page 268, found that "[i]t is not immediately evident from a reading of section [852, subdivision (a)] what is meant by the phrase 'an express declaration.' Examination of the words of the statute and their arrangement reveals only that the 'express declaration' called for is to be one 'by' which '[a] transmutation of real or personal property' is 'made.' The statute does not state what words such an 'express declaration' must include, what information it must convey, or even what topics it should discuss." Because it found that the "express declaration" language of the statute is unclear and ambiguous, the *MacDonald* court turned to the legislative history and the historical circumstances of the statute's enactment, in order to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *MacDonald, supra,* 51 Cal.3d at p. 268.) In this regard, the court found that, prior to the enactment of section 852, it was "quite easy for spouses to transmute both real and personal property; a transmutation [could] be found based on oral statements or implications from the conduct of the spouses." (Recommendation Relating to Marital Property Presumptions and Transmutations (Sept. 1984) 17 Cal. Law Revision Com. Rep. (1984) p. 213 (Commission report); *MacDonald, supra,* at p. 269.) The prior rule of "easy transmutation" was found to have caused extensive litigation in dissolution proceedings and to encourage spouses to "commit perjury by manufacturing an oral or implied

[2]Although the court in *MacDonald, supra,* 51 Cal.3d 262, actually construed Civil Code section 5110.730, the identical predecessor statute to section 852, we will refer only to section 852 throughout this opinion for ease of reference and in order to avoid confusion.

transmutation." (Com. rep., *supra,* at p. 214; *MacDonald, supra,* at p. 269.) ▪ Based on this history, the Supreme Court concluded that section 852, subdivision (a), was intended "to create a writing requirement which enables courts to validate transmutations without resort to extrinsic evidence and, thus, without encouraging perjury and the proliferation of litigation." (*MacDonald, supra,* at p. 272.)

The court in *MacDonald, supra,* 51 Cal.3d at pages 271-272, determined exactly what type of writing the legislature intended to require by use of the phrase "express declaration." To aid in this determination, the court referred to its previous construction of a similar writing requirement in Civil Code section 683, subdivision (a) which requires that the creation of a joint tenancy be "expressly declared." (*MacDonald, supra,* at pp. 271-272; see *California Trust Co. v. Bennett* (1949) 33 Cal.2d 694 [204 P.2d 324] (*Bennett*).) In *Bennett, supra,* at page 699, the high court observed: "It is well settled that where a statute requires the formality of a writing for the creation of an interest in the property, it must contain words *indicating an intent to transfer* such interest, . . ." (Italics added.) Under this principle, Civil Code section 683 was interpreted so as to ensure "that a court need not look beyond the face of the proffered writing to determine *whether its writer intended to create* a joint tenancy." (*MacDonald, supra,* at p. 272, italics added.) Explicitly following the approach elucidated in *Bennett, supra,* at page 699, the court, in *MacDonald, supra,* at page 272, concluded that a writing signed by the adversely affected spouse is not an "express declaration" for purposes of section 852, subdivision (a), *"unless* it contains language which expressly states that the characterization or ownership of the property is being changed." (*MacDonald, supra,* 51 Cal.3d at p. 272, italics in original.)

In *MacDonald, supra,* 51 Cal.3d at pages 272-273, the court held that the IRA account consent agreements did not satisfy the express declaration requirement of section 852, subdivision (a), because they did not contain language characterizing the property assertedly being transmuted, it was impossible to tell from the face of the documents whether Mrs. MacDonald was "aware that the legal effect of her signature might be to alter the character or ownership of her interest in the pension funds," and there was no language expressly stating that she was effecting a change in the character or ownership of her interest. In arriving at its holding, the court clarified that a valid writing under the subject statute need not include "the term 'transmutation' or any other particular locution." (*MacDonald, supra,* at p. 273.) In fact, the court held that the paragraph signed by Mrs. MacDonald would have been sufficient under section 852, subdivision (a), had it included an additional sentence reading: " 'I give to the account holder any interest I have in the funds deposited in this account.' " (*MacDonald, supra,* at p. 273.)

As with the requirements for the creation of a joint tenancy under Civil Code section 683, the requirements for a valid transmutation under Family Code section 852, subdivision (a), can be divided into two basic components: (1) a writing that satisfies the statute of frauds; and (2) an expression of intent to transfer a property interest. Based upon the *MacDonald* court's interpretation and application of section 852, subdivision (a), as well as its reliance upon its prior construction of the express declaration requirement in Civil Code section 683, we understand the Supreme Court to have interpreted the express declaration language of section 852, subdivision (a), to specifically require that a writing effecting a transmutation of property contain on its face a clear and unambiguous expression of intent to transfer an interest in the property, independent of extrinsic evidence. (See *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 593 [81 Cal.Rptr.2d 726] (*Barneson*) ["The *MacDonald* test . . . requires only a clear demonstration of a change in ownership or characterization of the property at issue"].)

As with the consent paragraphs in *MacDonald, supra,* 51 Cal.3d at page 268, there is no dispute in this case that the grant deed, which was signed by Everett, is a writing that was "made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (§ 852, subd. (a).) Thus, we need only determine whether the deed, independent of extrinsic evidence, contains a clear and unambiguous expression of intent to transfer an interest in the property. The grant deed on the Berkeley property states that Everett, as surviving joint tenant, granted the property to himself and Evelyn as joint tenants.[3] The deed is drafted in the statutory form required for expressing an intent to transfer an interest in real property. (See Civ. Code, §§ 1091, 1092.[4]) Since the *MacDonald* court held that the consent paragraphs would have been adequate for a valid transmutation had they said, " 'I *give* to the account holder any interest I have . . . ,' " and since "grant" is the historically operative word for transferring interests in

---

[3]Specifically, the grant deed states: "For a valuable consideration, receipt of which is hereby acknowledged, E.L. Bibb, as surviving joint tenant hereby grant(s) to E.L. Bibb and Evelyn R. Bibb, his wife as joint tenants the following described real property in the City of Berkeley[,] County of Alameda, State of California: Legal description attached hereto and made a part hereof by reference[.] Dated January 24, 1995[.] [signature line] E.L. Bibb."

[4]Civil Code section 1091 provides: "An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." Civil Code section 1092 provides: "A grant of an estate in real property may be made in substance as follows: [¶] 'I, A B, grant to C D all that real property situated in (insert name of county) County, State of California, bounded (or described ) as follows: (here insert property description, or if the land sought to be conveyed has a descriptive name, it may be described by the name, as for instance, 'The Norris Ranch.') [¶] Witness my hand this (insert day) day of (insert month), 20___. [¶] A B' " (Underscoring in original.)

real property, there is no doubt that Everett's use of the word "grant" to convey the real property into joint tenancy satisfied the express declaration requirement of section 852, subdivision (a). (*MacDonald, supra,* at p. 273, italics added.) Thus, the Berkeley property was validly transmuted into property held in joint tenancy, became Evelyn's separate property upon Everett's death, and was properly excluded from the probate estate. (§ 852, subd. (a); Prob. Code, § 6600, subd. (b)(1).)

## II.  *The Rolls Royce.*

 The document purporting to evidence the transmutation of the Rolls Royce in this case is a computer printout entitled "DMV Vehicle Registration Information," which reflects that, as of October 5, 1995, the vehicle, which had been previously registered in Everett's name alone, was reregistered in the names of Everett *or* Evelyn. No signature of any party appears on the document. As with the real property, Dozier contends that the DMV printout does not satisfy the "express declaration" requirement of Family Code section 852, subdivision (a), because it does not contain language "expressly stat[ing] that the characterization or ownership of the property [was] being changed." (*MacDonald, supra,* 51 Cal.3d at p. 272.) Evelyn responds that, because title to the automobile was held in joint tenancy, it is excluded from probate under Probate Code section 6600, subdivision (b)(1). Evelyn further argues that the transfer of title on the Rolls Royce is exempt from the requirements of section 852, subdivision (a), because the property was "commingled or otherwise combined" with marital property, as described in subdivision (d) of the subject statute.

Vehicle Code sections 4150.5 and 5600.5 effectively create a presumption that a vehicle "registered in the names of two (or more) persons as coowners in the alternative by use of the word 'or' " is held in joint tenancy. However, the Supreme Court's "interpretation of the 'express declaration' language in section 852, subdivision (a), can [also] be viewed as effectively creating a 'presumption' that transactions between spouses are not 'transmutations,' rebuttable by evidence the transaction was documented with a writing containing the requisite language." (*Barneson, supra,* 69 Cal.App.4th at p. 593.) The court in *Barneson* addressed the conflict in the presumptions created by Family Code section 852, subdivision (a), and Evidence Code section 662, which provides that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title." *Barneson* held that, because the Supreme Court's interpretation of section 852, subdivision (a), was based in part on a policy of " 'assuring that a spouse's community property entitlements are not improperly undermined,' " the general presumption under Evidence Code section 662 should not be used to negate the

more specific requirements of section 852, subdivision (a). (*Barneson, supra,* at p. 593; see *MacDonald, supra,* 51 Cal.3d at pp. 268-272.) Following the principle enunciated in *Barneson,* the more general form of title presumption created by Vehicle Code sections 4150.5 and 5600.5 should not be used to negate the requirements of section 852, subdivision (a), which assure that a spouse's separate property entitlements are not undermined. (*MacDonald, supra,* at pp. 268-272; see also *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 301-302 [39 Cal.Rptr.2d 673] [in case of conflict, the more specific presumption of undue influence in transactions between married persons under Fam. Code, § 721 prevails over the more general presumption of ownership from title under Evid. Code, § 662].)

Although the DMV printout may comply with the requirements for a presumption of joint tenancy under Vehicle Code sections 4150.5 and 5600.5, there is nothing on the face of the document evidencing that the change in the form of title was "made, joined in, consented to, or accepted by" Everett, the spouse whose interest in the property was adversely affected. (Fam. Code, § 852, subd. (a).) Moreover, the document does not contain a clear and unambiguous expression of Everett's intent to transfer his interest in the subject property, as required by section 852, subdivision (a). (*MacDonald, supra,* 51 Cal.3d at pp. 271-273; see *Estate of Petersen* (1994) 28 Cal.App.4th 1742, 1754-1755 [34 Cal.Rptr.2d 449] [designation of joint tenancy on account statement does not satisfy the requirement of an express written declaration pursuant to § 852, subd. (a)].) Thus, the Rolls Royce was not validly transmuted from Everett's separate property.

We are unpersuaded by Evelyn's argument that the Rolls Royce is exempt from the requirements of section 852, subdivision (a). Subdivision (d) of section 852 provides that "[n]othing in this section affects the law governing characterization of property in which separate property and community property are commingled or otherwise combined." As discussed above, application of section 852, subdivision (a), dictates that the Rolls Royce, which was owned separately by Everett prior to his marriage to Evelyn, maintain its character as Everett's separate property. In arguing that the Rolls Royce was somehow commingled or otherwise combined with marital property, Evelyn fails to cite any law governing the characterization of commingled or combined property, under which the vehicle should be characterized as something other than Everett's separate property. Since Evelyn fails to cite any law that conflicts with section 852, subdivision (a), there is no basis to conclude that the statute is inapplicable. (See *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 [46 Cal.Rptr.2d 119] ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"].)

In short, because the Rolls Royce was not validly transmuted under section 852, subdivision (a), it remained Everett's separate property. Thus, the trial court erred in excluding it from the probate estate.

III. *The Ring Set.**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

Reversed with respect to the Rolls Royce. Affirmed in all other respects. Parties are to bear their own costs on appeal.

McGuiness, P. J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 16, 2001.

---

*See footnote, *ante*, page 461.