Filed 3/17/14  Zweig v. Surinck CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| GARY ZWEIG, as Cotrustee, etc., | 2d Civil No. B245133 (Super. Ct. No. PO80082) (Ventura County) |
| Plaintiff and Appellant, | |
| v. | |
| KARON SURINCK et al., as Cotrustees, etc., | |
| Defendants and Appellants. | |

This is a contest between two sets of siblings over the assets of a trust.  The trial court found that one set of siblings has no interest in a parcel of real property held in trust and that the other set of siblings improperly withdrew money from the trust.  Both sides appeal.  We affirm.

## FACTS

Everett and Leona Martin were married in 1981.  They had no children together, but they each had children of prior marriages.  Karon Surinck and Darold Martin are the adult children of Everett (hereafter, Martin siblings).  Gary, Allen and Sharon Zweig are the adult children of Leona (hereafter, Zweig siblings).[1]

---

[1] Only Gary Zweig appeals.  All references to Zweig are to Gary.

Everett and Leona executed a trust on November 10, 1987. The trust provided that as long as the trustors or the survivor of them shall live, the trustors or the survivor shall have the exclusive use and benefit of the income and assets of the trust. Upon the death of the survivors of the trustors, all of Everett's separate property and half of the community propery shall be distributed to his children, and all Leona's separate property and half of the community propery shall be distributed to her children.

The trust did not contain a schedule of assets. Instead, Everett and Leona entered into a property agreement also dated November 10, 1987. Among other assets, the agreement listed 2036 Fifth Street, Glendale, California (Fifth Street property), as Everett's, and 301 North Belmont, Glendale, California (Belmont property), as community property.

Paragraph 3 of the property agreement provides in part:

"[E]ach spouse agrees that neither of them shall acquire any right, title, or interest, community or separate, in or to the other spouse's separate property by reason of any future community or separate property commingling, contribution, effort, service, repair, or improvement with, to, or for the other spouse's separate property, except as expressly agreed in a writing signed by both spouses."

The property agreement further stated at paragraph 6:

"After-acquired community property: Everett L. Martin and Leona M. Martin agree that any real or personal property, or any interest therein, title to which is acquired after the effective date of this agreement by either or both of them in both of their names, or any variation thereof, as follows, or words of similar meaning, is their community property:

"(1) Everett L. Martin and Leona M. Martin, husband and wife, as community property.

"(2) Everett L. Martin and Leona M. Martin, trustees of the Martin Trust dated November 10, 1987.

"(3)  Everett L. Martin and Leona M. Martin, husband and wife, as joint tenants.

"(4)  Everett L. Martin and Leona M. Martin, as joint tenants.

"(5)  Everett L. Martin or Leona M. Martin.

"(6)  Everett L. Martin and Leona M. Martin."

Everett and Leona were original cotrustees, Leona predeceased Everett, leaving Everett the sole trustee.  When Everett died, all the children became cotrustees.

After Everett's death, a dispute arose between the two sets of siblings. Zweig petitioned the probate court to determine the entitlement to the distribution of the trust assets.  The petition alleged the Fifth Street property was transmuted from Everett's separate property to Everett and Leona as tenants in common.  Thus the Zweig siblings were entitled to a one-half interest.  By the time of trial Zweig claimed the property had been transmuted to Everett and Leona's community property.  Zweig also claimed the Martin siblings had improperly taken the proceeds of the sale from the Belmont property.

*FIFTH STREET PROPERTY*

In January 1988 Everett quitclaimed the Fifth Street property into the trust. In February 1998 Everett and Leona as trustees took out a loan in the principal amount of $148,000 secured by a trust deed on the Fifth Street property.

In 2002 Everett and Leona decided to refinance the loan.  On November 21, 2002, the trustees recorded a grant deed to themselves "Husband & Wife as joint tenants."  Immediately thereafter, Washington Mutual Bank recorded a trust deed from Everett and Leona "Husband and Wife" securing a loan in the principal amount of $143,000.

On July 13, 2004, Everett and Leona executed a "Restatement" of the declaration of trust.  On the same day, Everett and Leona "husband and wife as joint tenants" quitclaimed the Fifth Street property to "Everett L. Martin and Leona M. Martin, Trustees of the Martin Trust."

Karon Surinck testified "the property was taken out of trust for the refi and was put back into trust when the trust restatement was completed." Then the following colloquy took place between the court and Surinck's counsel:

"THE COURT: All right. So why did we go through that whole dance about the joint tenancy?

"[COUNSEL]: Because it affects the character of the title, your Honor.

"THE COURT: How? If it was in the trust and it was joint tenancy and it was back in the trust, Isn't it kind of a no-harm-no-foul?

"[COUNSEL]: I'm sorry. I didn't understand what you said.

"THE COURT: I understand this property was in the trust, these Glendale apartments, 2036 West Fifth Street. It was in the trust prior to the refi.

"[COUNSEL]: It was.

"THE COURT: And then it was transferred to a joint tenancy in order to accommodate the loan transaction, because that's what lenders always do every time they do a loan, they can't loan to a trust, they loan to individuals. [¶] So the property was held in joint tenancy for a couple of years until the trust restatement was done in 2004. And then the attorney noticed it hadn't been put back into the trust, and then has it put back into the trust. [¶] So isn't it kind of a nullity, in terms of what happened in the interim?

"[COUNSEL]: I don't think so, your Honor. I don't think so at all.

"THE COURT: Why? [¶]. . . [¶]

"[COUNSEL]: . . . It has to do with the character of the property, whether it is community property at this point according to the property agreement. Because they changed it to a title that according to the property agreement is now community property.

"THE COURT: So you are saying it wasn't for the refi. It was to transmute the title of the property to something other than the separate nature? You are saying the loan transaction was a transmutation.

"[COUNSEL]: What I am saying is the deeds that followed it were a transmutation."

4

The trial court found that no transmutation had taken place. Everett changed title only for the purpose of facilitating the refinancing of a loan on the property. He did not intend a transmutation of his separate property. The court ordered distribution of the Fifth Street property, along with its rents and profits, solely to the Martin siblings.

*BELMONT PROPERTY*

The Belmont property is a condominium listed in the property agreement as Everett's and Leona's community property. Everett sold the Belmont property shortly before Leona's death. Leona was incapacitated at the time of the sale. Her name on the sale documents was forged.

The sale netted $335,678.37. The check was made out to both Everett and Leona as trustees of the Martin Trust. Initially, Everett tried to deposit the check into his separate account, but the bank would not accept the deposit. Eventually, Everett deposited the check into a Bank of America account entitled "Martin Trust Dated 11/10/1987 Everett L. Martin is Trustee." Darold Martin set up the account so that he would have electronic access to it. After Leona's death, through a series of electronic transfers, Darold transferred the money in the Bank of America trust account to a non-trust account he established at ING Direct. From the ING Direct account the funds were transferred to Darold and Karon either directly or by electronically transferring them to a Citibank account held jointly by Everett, Darold and Karon. From that account Karon and Darold wrote checks to themselves. Darold admitted he made all the electronic transfers himself. His father did not own a computer and would not have known how to turn one on.

Darold and Karon testified that their father authorized all the transfers.

The trial court stated that Article One, section A of the restated trust gives the surviving settlor the right to "deal with" the trust assets in any way the settlor sees fit. The court found, however, that the proceeds from the sale of the Belmont property were "unilaterally filtered and dealt with by Darold and Karon and not the surviving settlor . . . ."

5

The court further found that Leona's share of the proceeds from the sale of the Belmont property is $167,839.18. The court awarded interest on that amount at $16,783.92 a year or $45.98 per day. At the time of the judgment the total sum was $281,918.44, which the Martin siblings are required to pay to the Zweigs.

## DISCUSSION

### *Zweig's Appeal*

### I.

Zweig contends that as a matter of law the deed from the trust to Everett and Leona must be construed as a joint tenancy that was converted to a tenancy in common when it was conveyed back into trust. He concludes Leona owned one-half of the Fifth Street property as her separate property.

The contention is based on the theory that the joint tenancy deed actually conveyed a beneficial interest to Leona. Zweig relies on rules of construction in support of his argument that extrinsic evidence is not admissible to contradict an unambiguous deed. (Citing *City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 253.)

But the rules of construction are not applicable here. The Martin siblings are not contending the deed needs to be construed. They concede the form of title shows Everett and Leona as joint tenants. They point out, however, that the form of title on a deed creates only a rebuttable presumption of beneficial ownership.

Evidence Code section 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

Here, the trial court found the property was transferred into joint tenancy only to accommodate a loan. It was not the intent of the settlors to transfer any beneficial interest in the Fifth Street property to Leona.

### II.

Zweig contends the Martin siblings did not rebut the form of title presumption by clear and convincing evidence.

6

It does not matter whether the burden of proof in the trial court is by a preponderance of the evidence or by clear and convincing evidence. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal § 371, p. 428.) In either case, our task is limited to determining whether the judgment is supported by any substantial evidence. (*Ibid.*)

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, *supra*, § 376 at pp. 434-435.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App. 3d 1012, 1028.)

Here Everett and Leona had a property agreement that designated the Fifth Street property as Everett's separate property. The property was conveyed from the trust to joint tenancy as part of a loan transaction. It was then reconveyed into trust. The parties did not modify their property agreement even though they went through the trouble and expense of restating their trust. The trial court could reasonably conclude that the Fifth Street property was conveyed into joint tenancy solely to facilitate the loan transaction and not to convey any beneficial interest to Leona.

Zweig contends the trial court impermissibly assumed that the title to the property was placed in joint tenancy solely to accommodate the refinance. But it is not an impermissible assumption. Instead, it is a reasonable inference drawn from the evidence. A judgment may be supported not only by evidence, but by the reasonable inferences the trier of fact may draw from the evidence. (See 9 Witkin, *supra*, § 376, pp. 434-435.)

Zweig's reliance on *In re Marriage of Brooks and Robinson* (2008) 169 Cal.App.4th 176, is misplaced. There a married couple purchased a home. The down payment came from husband. Their real estate agent suggested it would be easier to

obtain financing if wife took the property in her name only. Wife took title to the property in her name only as a single woman. Later, wife unilaterally sold the property to a third party. Husband sought to set aside the sale on the ground that he had a community property interest in the home. In determining that husband failed to rebut the form of the title presumption, the court stated: "Nor can the presumption be rebutted by evidence that title was taken in a particular manner merely to obtain a loan." (*Id.* at p. 190.) In support of such a blanket statement the court cites *In re Marriage of Kahan* (1985) 174 Cal.App.3d 63, 69. But *Kahan* states only that the form of the title creates a presumption. It does not state that the presumption cannot be rebutted by clear and convincing evidence that the parties intended the form of the title only to facilitate a loan and not to convey a beneficial interest in the property.

Evidence Code section 662 does not limit the circumstances under which a party can rebut the form of title presumption. There is no reason why the form of the title presumption cannot be rebutted by showing the title was transferred only to accommodate a loan and not to convey a beneficial interest. We decline to follow *Marriage of Brooks and Robinson*, and to the extent it states otherwise, *Marriage of Kahan*.

### III.

Zweig contends the joint tenancy deed constitutes a transmutation as a matter of law.

Zweig cites Family Code, section 852, subdivision (a). That subdivision states: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

In *Estate of Bibb* (2001) 87 Cal.App.4th 461, husband executed a deed conveying his separate property to himself and his wife as joint tenants. After husband's death, his son by a prior marriage challenged wife's claim that the deed constituted a valid transmutation agreement under Family Code, section 852, subdivision (a). The trial

8

court found transmutation had occurred. The Court of Appeal affirmed. The Court held that the deed was sufficient to constitute "an express declaration" as required by Family Code, section 852, subdivision (a). (*Bibb*, *supra*, at pp. 468-469.)

Zweig cites *Estate of MacDonald* (1990) 51 Cal.3d 262, 271-272, for the proposition that whether a writing constitutes a valid transmutation agreement, it must be determined from the writing itself without the aid of extrinsic evidence. Zweig argues that the deed here constitutes a transmutation agreement and that extrinsic evidence is not admissible to show otherwise.

Zweig's argument runs directly contrary to Evidence Code section 662, which allows extrinsic evidence to show a deed is not intended to convey a beneficial interest. The section contains no exception for a deed alleged to constitute a transmutation agreement.

In fact, Zweig misinterprets *MacDonald*. *MacDonald* states that in enacting former Civil Code section 5110.730, subdivision (a), now Family Code section 852, subdivision (a), the Legislature intended "to create a writing requirement which enables courts to *validate* transmutations without resort to extrinsic evidence . . . ." (*Estate of MacDonald*, *supra*, 51 Cal.3d at p. 272, italics added.) *MacDonald* did not say extrinsic evidence is inadmissible to invalidate an alleged transmutation agreement. Clearly where, as here, the alleged transmutation agreement is a deed, extrinsic evidence may be admitted to show the parties did not intend the transfer of a beneficial interest. (Evid. Code, § 662.)

IV.

Zweig contends that the Fifth Street property was transmuted into community property pursuant to paragraph 6 of the property agreement.

Zweig points out that holding property as joint tenants or as cotrustees are ways in which community property is held under paragraph 6 of the property agreement. But paragraph 6 governs after-acquired community property. But here there was no after-acquired property. The property agreement designated the Fifth Street property as

9

Everett's separate property.  No beneficial interest in the property was ever conveyed to Leona.  The Fifth Street property remained Everett's separate property throughout the duration of the trust.

*Martin Siblings' Appeal*

V.

The Martin Siblings contend the trial court erred in awarding Zweig half of the proceeds from the sale of the Belmont property plus interest.

The Belmont property was community.  The trust requires the community property to be distributed equally to both sets of children.

The Martin Siblings argue that once the property was sold, the restated trust gave Everett the unqualified right to distribute the cash proceeds at his discretion.  The Martin Siblings rely on Article One, section B of the restated trust:  "We hereby designate ourselves as the primary trustees of this trust. . . .  Upon the death of one of us, the survivor shall continue to act as the primary trustee of this living trust, with full power and authority to deal with any and all of the assets of this trust in any manner that said survivor sees fit . . . ."

The trial court agreed that the trust gave Everett the discretion to distribute the proceeds of the sale to his children.  But the trial court found Everett did not exercise that power.  Instead, the court found Everett's children acted "unilaterally" in distributing the proceeds to themselves.

This finding is supported by the evidence that Everett made no distributions, but all the distributions were executed by his children.  Although the children both testified they had Everett's consent, the trial court was not required to believe them.  (See *Sprague v. Equifax*, *supra*, 166 Cal.App.3d at p. 1028 [the trier of fact is not required to believe even uncontradicted testimony].)

The Martin Siblings contend the trial court erred in awarding Zweig interest.  They acknowledge that the trial court may award interest against a trustee if the court finds a breach of trust.  (Prob. Code, § 16440.)  They claim, however, that the

10

evidence shows they acted in good faith and that the trial court did not make a finding that they breached their duties as trustees.

But the trial court found the Martin Siblings acted unilaterally in taking money from the trust. That is the equivalent of a finding of a breach of trust. That finding is sufficient to support an award of interest. The trial court was not compelled to find that they acted in good faith. In fact, the evidence that they acted on their own shows otherwise.

The judgment is affirmed. Each party is to bear his or her own costs.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

11

Glen M. Reiser, Judge

Superior Court County of Ventura

_____


Fuller & Fuller, Bruce P. Fuller, Christine M. Allen for Plaintiff and Appellant.

Catanese & Wells, Thomas R. Catanese; Jeffrey T. Schoenherr for Defendants and Appellants.