Filed 12/20/18; pub. order 1/18/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of RICHARD BEGIAN and IDA SARAJIAN. | B278316 |
| RICHARD BEGIAN, | Los Angeles County Super. Ct. No. GD058108 |
| Appellant, | |
| v. | |
| IDA SARAJIAN, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Theresa Traber, Judge. Reversed.

Law Offices of Donald P. Schweitzer and Patrick Baghdaserians; Garrett C. Dailey for Appellant.

Honey Kessler Amado and James A. Karagianides for Respondent.

_____

# INTRODUCTION

Family Code section 852, subdivision (a)[1] (section 852(a)) provides that a "transmutation," or an interspousal transaction changing the character of community or separate property, "is not valid unless made in writing by an *express declaration*" by the adversely affected spouse. (Italics added.) In *Estate of MacDonald* (1990) 51 Cal.3d 262 (*MacDonald*), our Supreme Court held that a writing satisfies the "express declaration" requirement only if it states on its face that "the characterization or ownership of the property is being changed." (*Id.* at p. 272.) The *MacDonald* court also made clear that its construction of section 852(a) precludes the use of extrinsic evidence to prove an ambiguous writing effected a transmutation. (*Id.* at p. 264; *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1100 (*Benson*).)

In this case we must decide whether a "Trust Transfer Deed," signed by Richard Begian, granting certain real property to his wife, Ida Sarajian, met section 852(a)'s express declaration requirement.[2] The trial court determined the document's use of the words "grant" and "gift" satisfied the requirement, because those terms have "an accepted historical meaning" in real property transactions, and thus gave Richard "clear notice" that he was changing the property's characterization and ownership. Notwithstanding the historical meaning of these terms, we conclude that without an express statement specifying *what*

---

[1]     Statutory references are to the Family Code unless otherwise designated.

[2]     Ida's mother, Rose Sarajian, was also a party to the Trust Transfer Deed. For clarity we refer to the parties by their first names.

*interest* in the property was granted to Ida, the reference to a "Trust Transfer" leaves the document's purpose ambiguous, and thus renders the purported transmutation invalid under section 852(a). We reverse.

### FACTS AND PROCEDURAL BACKGROUND

Richard and Ida married in August 1993 and lived together until their separation in September 2015. They have two children.

This appeal concerns a residential property located on Avonoak Terrace in Glendale, California (Avonoak). On April 29, 1996, Ida's mother, Rose, executed a "QUITCLAIM DEED" transferring a 48 percent undivided interest in Avonoak to Ida. Rose retained a 52 percent interest in the property.

On the same day, Richard executed a "QUITCLAIM DEED" transferring his ownership interest in Avonoak to Ida, as her sole and separate property. The deed stated: "IT IS THE EXPRESS INTENT OF THE GRANTOR, BEING THE SPOUSE OF THE GRANTEE, TO CONVEY ALL RIGHT, TITLE AND INTEREST OF THE GRANTOR COMMUNITY OR OTHERWISE, IN AND TO THE HEREIN DESCRIBED PROPERTY, TO THE GRANTEE AS HIS/HER SOLE AND SEPARATE PROPERTY."

On June 21, 2001, Rose and Ida executed an "INDIVIDUAL GRANT DEED" granting their respective 52 percent and 48 percent interests in Avonoak to "ROSE SARAJIAN, a Widow[,] and IDA SARAJIAN and RICHARD BEGIAN, Wife and Husband, All as Joint Tenants." Ida does not dispute that the deed effectively granted Richard a community property interest in Avonoak.

On May 1, 2006, Rose, Ida, and Richard executed a "Trust Transfer Deed." The deed stated: "FOR NO CONSIDERATION,

3

GRANTORS ROSE SARAJIAN, a Widow, and IDA SARAJIAN and RICHARD BEGIAN, Wife and Husband, all as joint tenants, hereby GRANT to IDA SARAJIAN, the following real property [legal description of Avonoak]." The deed stated the conveyance was not subject to a documentary transfer tax because " 'this is a bonafide gift and the grantor received nothing in return, R & T 11911.' "[3]

On December 19, 2014, Ida created the "Ida Sarajian Separate Property Trust," naming herself as trustee and her children as beneficiaries. The same day, Ida executed another "Trust Transfer Deed" stating "FOR NO CONSIDERATION, GRANTOR Ida Sarajian, a married woman as her separate property, hereby GRANTS to Ida Sarajian, Trustee of The Ida Sarajian Separate Property Trust dated December 19, 2014, the following described real property [legal description of Avonoak]."

On October 9, 2015, Richard commenced the underlying dissolution action, and requested the court confirm Avonoak as community property. Ida asserted the residence was her separate property.

On June 29, 2016, the trial court bifurcated the question of Avonoak's characterization from the remaining issues in the case. Richard argued the 2006 Trust Transfer Deed lacked an unambiguous declaration of his intention, as the adversely affected spouse, to transmute his community property interest into Ida's separate property. He maintained the document "was

---

[3]     Revenue and Taxation Code section 11911 authorizes the board of supervisors of any county or city to impose a tax on the transfer of real property when the consideration paid for the property exceeds $100.

prepared and signed in connection with estate planning," as demonstrated by the document's title, and the document made "absolutely no mention of the property rights being changed or the fact that [Richard's] interest [was] being adversely affected." Because "[n]othing on the face of the document explicitly state[d] that [he] was waiving away all of his community property ownership interest," Richard maintained the Trust Transfer Deed failed to meet section 852(a)'s express declaration requirement.

Ida argued the use of the word "grant" in the 2006 Trust Transfer Deed unambiguously demonstrated the parties' intention to change the characterization and ownership of Avonoak from a joint tenancy into Ida's separate property. Anticipating Richard's argument, Ida maintained the document's title was irrelevant to the express declaration analysis, because the Trust Transfer Deed named the grantee only as " 'Ida Sarajian,' " and it made no reference to "her capacity as trustee of any trust," let alone the Ida Sarajian Separate Property Trust, which did not exist in 2006.

On August 29, 2016, the trial court issued a statement of decision finding the 2006 Trust Transfer Deed validly transmuted Richard's community interest in Avonoak into Ida's separate property. Quoting from *Estate of Bibb* (2001) 87 Cal.App.4th 461 (*Bibb*), the court observed that " ' "grant" is the historically operative word for transferring interests in real property,' " and reasoned the parties' use of the word in the Trust Transfer Deed thus satisfied section 852(a)'s express declaration requirement. The court added that its conclusion was reinforced by the phrase "bonafide gift," explaining "this provision gave [Richard] clear notice that he was making a gift to [Ida] through the deed and, thus, making a change in the characterization or

5

ownership of the property." Finally, the court determined the deed's title did "not undermine the clear expression" of intent, because "the deed transfers Avonoak to [Ida], not to any trust, and there is no trust identified on the face of the document." On September 14, 2016, the trial court filed an order deeming Avonoak to be Ida's separate property for the reasons stated in its statement of decision.

On October 3, 2016, the trial court filed a certificate of probable cause for immediate appeal of its order on the bifurcated issue. On October 10, 2016, Richard filed a motion with this court for leave to appeal the bifurcated issue.[4] We granted the motion and now consider the matter.

## DISCUSSION

1. ***The Express Declaration Requirement and Standard of Review***

The question presented in this case is whether the trial court correctly determined Richard's execution of the 2006 Trust Transfer Deed effectively transmuted his community interest in Avonoak into Ida's separate property. Section 850, subdivision (b) provides that married persons may transmute the community property of either spouse into separate property "by agreement or transfer," subject to the provisions of sections 851 to 853. Section 852(a) provides: "A transmutation of real or personal property is not valid unless made in writing by an *express declaration* that is

---

[4]     Due to a clerical error, this court initially rejected Richard's motion. Upon review, the court concluded the motion was properly presented and deemed it filed as of the original October 10, 2016 date.

6

made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Italics added.)

In *MacDonald*, our Supreme Court interpreted the phrase "express declaration" in section 852(a) to require language expressly stating that a change in the characterization or ownership of the property is being made. (*MacDonald, supra,* 51 Cal.3d at p. 272.) Thus, "a writing signed by the adversely affected spouse is not an 'express declaration' for the purposes of [section 852(a)] unless it contains language which *expressly states that the characterization or ownership of the property is being changed.*" (*Ibid.*, italics added.)

An "express declaration" does not require use of the terms "transmutation," "community property," "separate property," or any other particular locution. (*MacDonald, supra,* 51 Cal.3d at pp. 272-273.) As the Supreme Court explained in *MacDonald*, the language " 'I give to the account holder any interest I have in the funds deposited in this account,' " is sufficient to establish a transmutation. (*Ibid.*) However, while "no particular terminology is required [citation], the writing must reflect a transmutation on its face, and must eliminate the need to consider other evidence in divining this intent." (*Benson, supra,* 36 Cal.4th at pp. 1106-1107.) In other words, "[t]he express declaration must *unambiguously* indicate a change in character or ownership of property." (*In re Marriage of Starkman* (2005) 129 Cal.App.4th 659, 664 (*Starkman*), italics added.) An instrument is ambiguous if " 'the written language is fairly susceptible of two or more constructions.' " (*Estate of Russell* (1968) 69 Cal.2d 200, 211.)

*MacDonald* concluded strict adherence to formalities was required to ensure a "party does not 'slip into a transmutation by

7

accident.' " (*Starkman, supra,* 129 Cal.App.4th at p. 664.; *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 593 (*Barneson*) ["*MacDonald* was based in part on a policy of 'assuring that a spouse's community property entitlements are not improperly undermined.' "].)  As our Supreme Court elaborated in *Benson*, "section 852 might prevent courts from finding a transmutation in cases where some evidence suggests the spouses meant to change the character of their property, but where they failed to follow the statutory requirements." (*Benson, supra,* 36 Cal.4th at p. 1107.)  Nonetheless, "any incongruous results" must be attributed to "the manner in which lawmakers ultimately chose to balance the competing policy concerns," and "*MacDonald* declined to second-guess the legislative decision to sacrifice informality in transmutations in favor of protecting community property and promoting judicial economy." (*Ibid.*, citing *MacDonald, supra,* 51 Cal.3d at p. 273.)

"In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence." (*Starkman, supra,* 129 Cal.App.4th at p. 664; *MacDonald, supra,* 51 Cal.3d at pp. 271-272.)  To effectuate a valid transmutation, there must be some writing by the owner "contain[ing] on its face a clear and unambiguous expression of intent to transfer an interest in the property, independent of extrinsic evidence." (*Bibb, supra,* 87 Cal.App.4th at p. 468.)  "Under the circumstances, we are not bound by the interpretation given to the written instruments by the trial court." (*Starkman,* at p. 664; *In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 50 (*Lund*).)  Thus, we review the question de novo, exercising our independent judgment to determine whether the proffered writing contains the requisite language to

8

effectuate a transmutation under section 852(a). (*Starkman,* at p. 664; *Barneson, supra,* 69 Cal.App.4th at p. 588; see also *Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 619 ["The inquiry into ambiguity presents a question of law subject to independent review on appeal."].)

**2.** **_The Trust Transfer Deed Does Not Unambiguously Indicate a Change in Character or Ownership of Avonoak_**

Richard argues the Trust Transfer Deed contains two critical ambiguities that together preclude a finding that it meets section 852(a)'s express declaration requirement. First, Richard emphasizes the instrument's title—"Trust Transfer Deed," which he says necessarily "suggests the transfer is associated with a trust." Second, he points to the conveyance language itself, stressing "the deed does not say what interest is being granted." Taken together with the reference to a "Trust Transfer," Richard maintains the conveyance language is reasonably susceptible of the interpretation that he granted his community interest in Avonoak to Ida to be held in trust, and not to effect a change in the marital character or ownership of the property. Because his intention as gleaned solely from the face of the Trust Transfer Deed is ambiguous, Richard argues the writing does not satisfy the express declaration requirement. We agree.

*Barneson* is instructive. In *Barneson*, the husband, after suffering a stroke, gave written instructions to his stockbroker to " 'sell, assign, and transfer' " stock into his wife's name and "journal" stock in his account into his wife's account. (*Barneson, supra,* 69 Cal.App.4th at p. 586.) Years later, the husband filed a petition for dissolution of marriage and sought return of the stock. The trial court found the stock transfers effectively

9

transmuted the stock to the wife's separate property under section 852(a).  The appellate court reversed.

The *Barneson* court explained, "*MacDonald*'s interpretation of the 'express declaration' language in section 852, subdivision (a), can be viewed as effectively creating a 'presumption' that transactions between spouses are not 'transmutations,' rebuttable by evidence the transaction was documented with a writing containing the requisite language." (*Barneson, supra,* 69 Cal.App.4th at p. 593.)  In concluding the proffered writing failed to rebut the presumption, the court rejected the assertion that the instructions unambiguously directed a "change in ownership," observing the instructions "only directed 'transfer' of the stocks to [the wife], *without specifying what interest was to be transferred.*" (*Id.* at p. 590, italics added.)  This ambiguity allowed for an interpretation that the husband "may simply have intended to enable [the wife] to more easily manage his financial affairs for him after his stroke—in other words, he may have intended to transfer management of the property without changing its ownership or characterization." (*Id.* at p. 591.)

As particularly relevant to this case, the *Barneson* court also observed that "[n]othing on the face of the documents . . . precludes the possibility the transfer was made *in trust.*" (*Barneson, supra,* 69 Cal.App.4th at p. 591, italics added.)  In identifying this possibility, the court clarified that it was not suggesting "there is evidence of such a trust in the present case, nor that we could directly consider such evidence in determining whether [the husband's] directives transmuted his property within the meaning of section 852, subdivision (a)—as stated above, the determination whether the *MacDonald* test has been met must be made without resort to parol evidence." (*Ibid.*)

10

Rather, the point was "simply that a direction by a spouse to transfer stock into his spouse's name does not *unambiguously* indicate the ownership of the stock is being changed." (*Ibid.*, italics added.)

Ida argues *Barneson* is distinguishable. Unlike the writing in *Barneson*, she emphasizes the Trust Transfer Deed did not use only the word "transfer," but also stated "that the transfer was 'a bonafide gift' and that Richard was 'granting' the property to Ida." In view of this additional conveyance language, Ida maintains *Bibb* is the better authority to guide our analysis.

The issue in *Bibb* was whether a grant deed executed by the husband, transferring real estate owned as his separate property to himself and his wife as joint tenants, was sufficient to transmute the property under section 852(a). (*Bibb, supra,* 87 Cal.App.4th at p. 465.) The grant deed at issue stated: " 'For a valuable consideration, receipt of which is hereby acknowledged, E.L. Bibb, as surviving joint tenant hereby grant(s) to E.L. Bibb and Evelyn R. Bibb, his wife as joint tenants the following described real property in the City of Berkeley . . . .' " (*Id.* at p. 468, fn. 3.) The husband's child from a prior marriage argued the grant deed did not satisfy the express declaration requirement, because it did "not contain language ' "expressly stating that the characterization or ownership of the property [was] being changed." ' " (*Id.* at p. 465.) The wife responded that the property was "presumed to be held in joint tenancy, as described in the grant deed, and, therefore, [was] excluded from

11

probate under Probate Code section 6600, subdivision (b)(1)."[5] (*Ibid.*)

The *Bibb* court held the grant deed's language was adequate to satisfy the express declaration requirement. Addressing the argument that the deed failed to meet the *MacDonald* standard, the *Bibb* court explained: "The deed is drafted in the statutory form required for expressing an intent to transfer an interest in real property. [Citations.] Since the *MacDonald* court held that the [proffered writings] would have been adequate for a valid transmutation had they said, ' "I *give* to the account holder any interest I have . . . ," ' and since 'grant' is the historically operative word for transferring interests in real property, there is no doubt that [the husband's] use of the word 'grant' to convey the real property into joint tenancy satisfied the express declaration requirement of section 852, subdivision (a). [Citation.] Thus, the Berkeley property was validly transmuted into property held in joint tenancy, became [the wife's] separate property upon [the husband's] death, and was properly excluded from the probate estate." (*Bibb*, *supra*, 87 Cal.App.4th at pp. 468-469, citing § 852(a) & Prob. Code, § 6600, subd. (b)(1).)

Although neither case is perfectly analogous to this one, we find the facts and analysis of *Barneson* to be more apposite than those of *Bibb*. Ida is correct that the *Bibb* court expressly rested its holding on the premise that " 'grant' is the historically

_____

[5]     Probate Code section 6600, subdivision (b)(1) states: "Any property or interest or lien thereon which, at the time of the decedent's death, was held by the decedent as a joint tenant, or in which the decedent had a life or other interest terminable upon the decedent's death, shall be excluded in determining the estate of the decedent or its value."

operative word for transferring interests in real property" (*Bibb, supra,* 87 Cal.App.4th at p. 469), and, in this respect, Richard's use of the word likewise must be viewed as an unambiguous expression of his intent to transfer an interest in Avonoak to Ida. But unlike *Bibb*, where the court was forced to conclude the property "became [the wife's] separate property upon [the husband's] death" due to his "use of the word 'grant' to convey the real property into *joint tenancy*" (*ibid.*, italics added), here, Richard's mere use of the word "grant" does not dictate a definite conclusion about what interest in Avonoak he meant to convey to Ida. In other words, as was true of the phrase "sell, assign, and transfer" in *Barneson*, Richard's use of the word "grant" is ambiguous, because the word only establishes his intention to transfer an interest in real property, "without specifying *what interest* was to be transferred." (*Barneson, supra,* 69 Cal.App.4th at p. 590, italics added; see *Benson, supra,* 36 Cal.4th at p. 1107 [citing *Barneson* as example of decision that properly "adhere[d] closely to *MacDonald*, and decline[d] to find a valid transmutation absent express written language to that effect," noting the "written brokerage instructions changed possession, not ownership, of stock"].)

The reference to a "Trust Transfer" in the deed's title compounds this ambiguity, because it suggests, as Richard maintains, that the conveyance to Ida may have been made for the purpose of placing the property into a trust, and not with the intention to change its marital character or ownership. (See, e.g., *Starkman, supra,* 129 Cal.App.4th at pp. 662, 665 [husband's execution of general assignment document transferring all property into family trust for estate planning purposes was not an express declaration, notwithstanding trust provision stating,

13

"any property transferred by either [Settlor] to the Trust . . . is the community property of both of them"].) Ida argues the reference to a trust transfer should raise no concern, because under established principles of contract and statutory construction a "title" or "label in a legal document" is "not controlling" of its effect, and because the body of the deed "does not mention any trust." We are not persuaded.

While it may be that a title or label is not "controlling" where specific provisions of the writing dictate a definite interpretation, it is not true that the characterization of a transfer in a deed's title is irrelevant to the express declaration inquiry. Thus, in *In re Marriage of Kushesh & Kushesh-Kaviani* 27 Cal.App.5th 449, the court reasoned that an " 'INTERSPOUSAL TRANSFER GRANT DEED' " presented a better case for finding an express declaration than the grant deed in *Bibb*, because "not only did the writing use the verb 'grant'—the main point of Bibb—but *the heading* added the words 'interspousal'—denoting a spouse-to-spouse transaction—and 'transfer grant'—denoting that whoever was doing the granting was actually transferring something out of that person's estate." (*Marriage of Kushesh,* at pp. 454-455, italics added.) Absent an unambiguous statement that the transfer would change the character or ownership of Avonoak, the document's title makes it reasonable to entertain the possibility that Richard executed the deed for the purpose of making only a "Trust Transfer." (See *Barneson, supra,* 69 Cal.App.4th at p. 591; *Starkman, supra,* 129 Cal.App.4th at pp. 662, 665; cf. *Lund, supra,* 174 Cal.App.4th at pp. 51-52 [provision stating " '[a]ll of the property, real and personal, held in the name of Husband having its origin in his separate property . . . *is hereby converted to community property*

14

of Husband and Wife' " was sufficient to meet express declaration requirement, notwithstanding "recitals . . . indicating the agreement was executed for 'estate planning purposes' "].)

The absence of a named trust or trustee in the Trust Transfer Deed does not clarify the ambiguity. As in *Barneson*, the ambiguity in the Trust Transfer Deed stems from its lack of specificity about what interest Richard granted to Ida. Thus, regardless of what extrinsic evidence would show about the existence of a trust, Richard's intention remains ambiguous in that "[n]othing on the face of the document[ ] upon which the transmutation claim is based precludes the possibility the transfer was made in trust." (*Barneson, supra,* 69 Cal.App.4th at p. 591 ["We do not suggest there is evidence of such a trust in the present case . . . . The point is simply that a direction . . . to transfer stock into [a] spouse's name does not unambiguously indicate the ownership of the stock is being changed."].) Indeed, here we have more than just a lack of language precluding the possibility. In this case we actually have language in the proffered transmutation instrument that expressly refers to a "Trust Transfer." Basing our judgment solely on the face of the document, we are forced to acknowledge it is reasonably susceptible of the interpretation that Richard transferred his interest in Avonoak to Ida only for the purpose of depositing it into a trust, without changing the character or ownership of the property. (See *Starkman, supra,* 129 Cal.App.4th at pp. 662, 665.)

The same analysis applies to the language characterizing the transfer as a "bonafide gift" for which the grantors "received nothing in return." Contrary to Ida's contention, the *MacDonald* court did not suggest that mere use of the word "give," without

15

more, would have satisfied the express declaration requirement. Rather, in clarifying that no particular locution was mandated, the Supreme Court remarked that the transfer documents would have been sufficient had they specified *what* interest was being conveyed—e.g., " 'I give to the account holder *any interest I have* in the funds deposited in this account.' " (*MacDonald, supra,* 51 Cal.3d at pp. 272-273, italics added.)[6] A statement like this clearly satisfies the *MacDonald* standard, not because "give" has special meaning, but because the conveyance of "any interest I have" unambiguously declares that "ownership of the property is being changed." (*Id.* at p. 272.) The same cannot be said for the bare statement that a conveyance is a "bonafide gift" exempt from the documentary transfer tax. Indeed, as Richard points out, if he had transferred Avonoak to Ida in connection with a trust, he also would have received no consideration, and the transfer would have been a "gift" exempt from the tax.[7]

---

[6] In *Barneson*, the court similarly commented that the transfer instructions would have been sufficient had they indicated the husband was "giving his interest in the stocks to [the wife]." (*Barneson, supra,* 69 Cal.App.4th at pp. 593-594.) In doing so, the court relied upon the quoted statement from *MacDonald*, and thus could not have intended its remark to establish a more expansive standard for validating a transmutation than the *MacDonald* court envisioned. This is especially apparent since the principal fault the *Barneson* court found in the transfer instructions was that they failed to specify "what interest was to be transferred." (*Barneson,* at p. 590.)

[7] At oral argument, Ida's counsel suggested the reference to a "bonafide gift" unambiguously established a change in marital character because, under section 770, gifts received during marriage are presumed to be the separate property of the

None of this is to say that Ida's proffered interpretation of the Trust Transfer Deed is unreasonable.  All we hold is that the deed is fairly susceptible of at least two interpretations—the one Ida proffers, whereby Richard granted *all of his interest* in Avonoak to her, thereby transmuting the residence into her separate property, and the one Richard proffers, whereby he granted *only an interest in trust* to Ida for the couple's estate planning purposes.  As numerous other courts have observed, this ambiguity would have been eliminated by including language in the Trust Transfer Deed specifying that Richard granted all or any interest he had in Avonoak to Ida, or, as he had in the 1996 quitclaim deed, by stating he granted Avonoak to Ida "as her sole and separate property."  However, because no definitive judgment about the adversely affected spouse's intention can be made from the face of the Trust Transfer Deed alone, and because the court is barred from considering extrinsic evidence that might allow it to resolve the conflicting interpretations in favor of finding a transmutation, we are left with the default presumption that this interspousal transaction was not a transmutation of Richard's community interest in the property.  (See *Barneson, supra,* 69 Cal.App.4th at p. 593.)

---

receiving spouse.  The presumption is insufficient to establish an express declaration for the same reason the deed's language standing alone is ambiguous—that is, it does not clarify *what interest* in Avonoak was given to Ida.

17

## DISPOSITION

The trial court's decision on the bifurcated issue is reversed.  Each party to bear his and her own costs.

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.

Filed 1/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of RICHARD BEGIAN and IDA SARAJIAN. _____ RICHARD BEGIAN,     Appellant,     v. IDA SARAJIAN,     Respondent. | B278316 Los Angeles County Super. Ct. No. GD058108 ORDER CERTIFYING FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on December 20, 2018, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____

EGERTON, J.          EDMON, P. J.          LAVIN, J.

19